Cubia per
Nolt, J.'
The cases involving the questions now submitted to our consideration, which have hitherto occurred in our Courts, appear to have been decided upon their particular circumstances, without reference to any general principle by which such cases ought to be governed. And when any general principle ,has been resorted to, it has been with a view to the particular case then under consideration, without laying down any system of rules to which the several classes of cases of this description may be referred. And although this case may be decided upon its own particular circumstances, yet the period will come, if it has not already arrived, when we must establish some general principles for the government of our decisions, which will give somewhat more certainty to the law on the subject than has hitherto prevailed.
I have always been of opinion that the Statutes, 13th and 27th Eliz. had introduced no new principle, but that they were merely declaratory of the Common Law. I am aware that the dicta of respectable Judges will be found to the contrary. But such was the opinion of Lord Coke and' Lord Mansfield; and Chief justice Marshall has expressed his concurrence in that opinion. Roberts on Fraud. Con. 19. 1st. Cranch 316, Hamilton vs. Russell. If, therefore, I have erred, it is some consolation to find *298 myself in thfe company of Lord Coke, Lord Mansfield am! Chief Justice Marshall- But without relying alone upon illustrious names, it appears to me impossible to read those Statutes without coming to the same conclusion. The first declares void and of no effect, “ all feigned, covenous and fraudulent feoffments, gifts, grants, &c-devised and contrived of malice, fraud, coven, collusion, Or guile, to the end, purpose and intent, to hinder, delay, •or defraud creditors.” The other declares void and of no effect, all fraudulent and covenous conveyances of any estates, &c. made for the purpose and intent to de¿mxc those who have or shall purchase the same. Those Statutes, therefore, make void only such gifts, sales, or conveyances as are covenous and fraudulent, and made for the purpose and with the intent to deceive and defraud creditors or bona fide purchasers. Now, I apprehend that there never was a time when the Common Law would not have made void covenous and fraudulent deeds, made for the purpose and with the intent to deceive and defraud either creditors or bona fide purchasers. These Statutes, therefore, it would appear to me, can be considered as nothing more than literal transcripts of the Common Law.
If it be said, that in the construction of these Statutes the decisions have gone much farther than the decisions at Common Law, it may be answered, that they liave gone much farther than they ever ought to have gone, as I shall be able most satisfactorily to shew. But if those decisions can be supported by any just construe-tiort of the Statutes, the Common Law would have admitted of precisely the same construction. For after departing from the letter of the Statutes, all the rest is construction, and would as well have been justified by the Common Law as the Statutes.
But let us come to the case now tinder consideration. *299 It appears that Luke Norris, the owner of the slave in question, on the 13th of February, 1809, conveyed this negro with other property, real and personal, to the Plaintiff, in trust for the sole and separate use of his wife' for life, with remainder to such children of the marriage as should be living at her death, remainder to himself.— Norris, at the time the Deed was made, was very much involved. He owed a Mr.Ricks three hundred dollars,andse. veral other debts; and he afterwards took the benefit of the insolvent debtors act. It also appeared in evidence, that this Deed had been declared void by the Court of Equity, and that the property was ordered to be sold for the purpose of paying the debt of Ricks, or so much of it as was necessary for that purpose ; but that all except some small debts had been paid several years before the sale of the negro to the Defendant’s Testator.
It may here be remarked that this is the second application for a new trial in this case. On the former trial there was no evidence given of the debt due to Ricks, nor of the proceedings in the Court of Equity, nor of several other debts which have now been proved to have been owing by Norris, nor of his having taken the benefit of the insolvent debtors act. It appears that Norris always continued in possession of the negro, and used, and employed him as his own from the time of the Deed of Trust up to the time of the sale to the Defendant’s Testator. Several questions now arise out of this state of facts.
First. Was the indebtedness of Norris, at the time the Deed of Trust was made, such as to render it fraudulent and void ?
Secondly. Did the subsequent payment of the debts-render it valid ?
Thirdly. Suppose him not to have been indebted at the time of the sale to the Defendants intestate, was that *300 sale, he being a bona fide purchaser for a valuable consí deration, good against a prior voluntary deed ?
Fourthly. If good without notice, would his having notice of the prior Deed render it void ?
Fifthly. Was there sufficient evidence of notice in this pase to entitle the Plaintiff to a verdict ? '
On the-first question there can be no doubt, if we are to be governed by the English decisions which have taken place op their construction of the 27th Elizabeth. They go the whole length of declaring that a subsequent ] purchase shall prevail against a prior voluntary deed, j even where th.e purchaser has notice of the voluntary) deed. These, however, are cases involving titles to real estate to which the Statute exclusively relates. So that the question now is, whether the Statute admits of such a construction as to make a difference between the effect of a conveyance of real estate and the sale of goods, and chattels, which must be governed by the rules of the Common Law ? In addition to the observations which I have already made on that subject, I. would further remark that the property, of this country consists principally ofland and slaves.. These two species of property are so inseparably connected that one is comparatively useless without the other. The almost invariable habit of the country is'upon settling off a son or daughter for a parent to give a portion of his lands and slaves as a provision for their support. Now', if a parent, should be unnatural enough and dishonest enough to sell the same property which .he. had tlxus voluntarily conveyed, could it be contended that the voluntary conveyance of the land would be fraudulent and that of the personal property good ? ^ The Statute provides against conveyances made for the purpose and with the intent to defraud It is.not the act of conveying voluntarily which renders the deed void ; but the intention with -which it is done. *301 The Court therefore are not to look to the act alone, but to the motive. To be sure, the act may be taken as the evidence of the motive. But not more so in the one case than in the other. And it is difficult to comprehend how even a Statute of the British Parliament can make a person believe that a conveyance containing both real and personal estate, or cotemporaneous deeds, one conveying real and the other personal estate, attended with precisely the same circumstances and made for the same object, can be good as to one and fraudulent and void as to the other. Neither can the consciences of men be thus shackled by the most solemn decisions of Courts. Courts may decide what may be the legal evidence of fraud; but that being determined it must be the same whether it relates to lands or negroes. I do not mean to be understood that an inference of fraud is never to be drawn from the value of the property. Thus, for instance, a voluntary disposition of articles of the first necessity, such as household furniture, provisions, and such like articles, of which the donor is in the habitual use, cannot fail to excite a suspicion of fraud. But it would not arise so much from the nature of the property as from the improbability that a person would gratuitously divest himself of those articles which were necessary for his own immediate subsistence. For when he has a superabundance even of these articles it would afford no such evidence. The question then is whether we shall adopt the English decisions to the whole extent to which they have gone, or whether we shall give our own construction to the Statutes, and adopt a uniform rule both as to real and personal estate, or rather to enquire whether, what we shall think a correct construction of them will not lead to such uniformity. With that view it will be necessary to recur to the cases which have been decided in our own Courts to ascertain how far any principles *302 have been settled by those decisions, and what those principles arc.
I do not know that any case has arisen under the 27th Elizabeth. I can find none reported. With regard to the voluntary transfer of personal property I can find but two cases which bear any analogy to this. The first is the caseot Hamilton and Lambright, Trustees of Holman vs. Greenwood, et. al. 1 Bay. 173. In that case, Holman, the husband, made over several negroes to the Plaintiffs as trustees for his wife, being considerably indebted at the time. After having made such voluntary deed, he gave a mortgage of the same property to the Defendant .to secure a debt which he owed previously to the making of the trust deed. And the question was, whether the trust deed was fraudulent1 as to the creditors and subsequent purchasers. — That is to say, whether the voluntary deed or mortgage should prevail. The reporter represents the Court unanimously to have laid it down, that fraud, or no fraud, was a matter under all the circumstances, very proper, for the consideration of the Jury, and finally submitted the case to them, who found a verdict for the plaintiff. This then was only the verdict of a Jury, from which there was no appeal, and cannot therefore be considered of very high authority. But I presume that there can be but little doubt that such a verdict would not bo supported at this day. It seems now to be well settled as a rule of Law, that a voluntary deed is void as to existing creditors whenever the donor is largely indebted at the time of making the deed. Chancellor Kent, in the case of Read vs. Livingston and others Johnson C. C. 481, goes so far as to hold that the least indebtedness, however small, will render a voluntary deed void. And none of the cases allow it to pi’evail except in cases of inconsiderable debts; such for instance as those current expenses which every man is supposed to *303 owe, and where he has at the time ample funds over and above the property so given.
Another case bearing some analogy to this, is the case of Teasdale ads. Reaborne, trustee of Mrs. Opie, 2 Bay. 546. That was an action brought by Rearborn, as trustee of Mrs. Opie, to recover certain negroes made over to him for her use by way of marriage settlement before marriage. The husband after marriage sold the negroes to Teasdale. But that was an antinuptial settlement made in consideration of marriage, and therefore was not voluntary, but was founded on what in legal contemplation is a good consideration. The Court however took the occasion to declare that a deed making provision for a wife or family is not void merely because it is voluntary. That in order to make it so, it must be made with a view to defeat bona fide purchasers or to defraud creditors. It was further held that the circumstances of the husband being indebted to the small amount of about twelve or thirteen dollars at the time of the settlement did not affect the case. The plaintiff therefore was permitted to recover a verdict against the subsequent purchaser from the husband, These cases therefore do not settle any thing with regard to the question now under consdcration. But I apprehend there can be no doubt that when once it is seen that a voluntary deed is intended to secure the property from the reach of creditors it may also be considered as fraudulent against a subsequent purchaser. The fact that a fraud was originally intended, taken in qoiu nection with the subsequent sale, wmuld very well authorize the inference that no change of property was intended to take place, and that the right still continued in the donor, unless such gift should be accompanied by possession separate and distinct from the possession of the donor. Possession of personal property always carries with it evidence of title, and is that kind of evidence of *304 which a purchaser is bound to take notice. If, therefore, the defendant’s testator had purchased during the time that Norris was laboring under the load of debt with which he was encumbered at the time the trust deed was made, I have no doubt that the purchase ought to have taken precedence of the gift.
2. The next question is whether the subsequent payment of the debts rendered the trust deed valid. And here it is to be observed that a voluntary deed is always good between the parties. It is Amid only as it regards creditors or subsequent purchasers. It does not lie in the mouth of the donor to say that he intended it as a fraud, and therefore the donee shall not have the benefit of it. Whenever therefore a deed is A'oid merely against creditors, the payment of the debts avíII cure the defect, hat* AVhqn it is attended Avith circumstances which authorize a belief that no change of property Avas actually intended to take place but that it should revert to the donor as soon as the debts AA'ere paid, the rights of a subsequent purchaser cannot be affected by the payment of the debts. Now Avhat are the facts in this case. The debts Avere never paid but by a succession of law suits and by the compulsory process of law. As soon as the debts Avere paid, the donor resumed the right of disposing of the property. The plaintiff did not interfere Avhen he Avas about to remove it to the Western Country. And Avhen. interrogated by the defendant’s testator Avith respect to his right, refused to give him any satisfaction. And although the conduct of defendant’s testator Avas not altogether free from suspicion, it did not excuse the mysterious conduct of the plaintiff. Indeed there is reason to believe that this is a speculation on both sides, and that neither party has any very strong'claims upon the justice of the Gourt. It is one of those cases which appears to be-so shrouded in obscurity, that it is difficult to discoAmi- *305 its merits, and furnishes but little ground for the exercise of the judgment of the Court, and formed a proper case for the consideration of a Jury.
3. But let us suppose that no actual fraud was intended, it remains to be determined whether the fact that the donor continued in possession, used the property as his own, and exercised every act of ownership over it, and enjoyed the profits of its labor is nqt of itself in legal contemplation, sufficient evidence of fraud to render the deed unavailing against a subsequent purchaser without notice. And although I do not intend to give a conclusive opinion on that question, it is one of too much importance to be passed over without some consideration. It has already been remarked that the English decisions .under the 27th of Eliza, have gone the whole length of declaring that a subsequent sale to a bona fide purchaser even with notice shall- prevail against, a voluntary deed. These decisions I shall undertake by and by to shew cannot be supported by any just construction of the statute.. But as far as they have gone to declare that a subsequent sale to a bona fide purchaser, without notice, shall itself be evidence of fraud to avoid a voluntary deed I do not know that they have ever been questioned. And we have been so much in the habit of respecting the English decisions as authority' on all their statutes which have been made of force here, that I do not recollect that we have ventured to put a different construction upon one whieh has come down to us through a train of decisions stamped with the approbation of the able Judges of that country; and although we may not always see the reason on which their decisions are founded, it is safer generally to trust to the experience of those who by their wisdom and learning are entitled to our confidence than to our own hasty views without experience. It would seem to me thez’efore, that unless we can make a distinction between *306 cases of real and personal property, and 1 have not bee's able to discover any, we must give effect to a bona fide sale without notice against a voluntary deed. And such I think has been the prevailing opinion in this State, as may be collected from the decisions to which I have already referred, as well as others. It appears to me also to result from the well settled principles of law in analagous cases. Possession is the highest evidence recognized by law of a right to personal property. A vendor continuing in possession, is regarded as to creditors or subsequent .purchasers as the owner, against the most solemn unconditional deed to a bona fide purchaser not in possession. A purchaser from a Trustee without notice will hold the property discharged from the trust. These arc the settled rules of the common law to which the common sense •of the community yields a ready assent from the obvious tendency to fraud to which a contrary doctrine would lead. It may be said that as the object of the deed of trust in this case was to make provision for the wife and children who were living with the donor, his possession was consistent with the terms of the deed, and therefore furnished no evidence of fraud. And it is true that so far as a .presumption of fraud is to be drawn from the variance between the terms of the deed and the possession, •the argument is correct. Whenever therefore the property has been kept for the separate use of the donee, and the profits and labor reserved as an accumulating fund for his benefit, it may repel the presumption of fraud. But where it has been kept and enjoyed by the donor as his own and for his own benefit and when the gift is evidenced only by some deed locked up in his desk, or made by parol and recorded only in the tenacious memory of some family gossip to be called up at any indefinite period, or to be forever buried there, as occasion may happen to suit, such a possession must be considered as inconsistent with *307 the professed object of the deed as if it had been made to any other person and ought to be subject to the same suspicion. If such gifts or conveyances are to prevail against creditors and bona fide purchasers, it is impossible to foresee to what extent frauds may not be carried. The generality of expression used in some of our decisions would seem to authorize the inference that when a gift is made by a parent to a child, the possession and use of the property by the parent furnishes no evidence of fraud. But when those cases come to be examined it will be found that the decisions depended on the particular circumstances of each case and have settled no rule of Law on the subject. In the case of Steel vs. M‘Night, 1 Bay 64, it appeared that a grandfather made a parol' gift of a Negro Girl to his infant grand child. The donor continued in possession and used and employed the slave as his own until his death. She was then appraised and sold as a part of his estate and afterward came into the possession of the defendant as' a bona fide purchaser. Eighteen years had elapsed before the plaintiff brought his action. Yet under the charge of the Court the plaintiff' recovered and the defendant acquiesced in the verdict. I cannot help thinking that it was a most extraordinary decision. But being a mere circuit decision it is of no authority. And the case is of no importance except for the mischief it has done and the rich harvest which it has brought to the profession. The case of Smith and Littlejohn, 2 M‘Cord, 362, was a gift by a parent to his child. But in that case the donor was not indebted at the time of the gift, and the creditor and subsequent purchaser were aware of the gift at the time the debt was contracted. The case of Kid and Mitchell, 1 Nott & M‘Cord 339, was one of a similar nature and turned also upon the evidence of notice. So that it does not appear to me that any of our decisions stand in the way of any rule which we may now think proper to adopt.
*308 4th. It is however contended that the defendant’s testator was aware of the trust deed at the time of his purchase, which gives rise to the question how his title .'¿ati-be effected by notice. The cases in the English b.opks whichinvolve that question, are Buckle vs. Mitchell, 18 Ves. 116. Pulvertoft vs. Pulvertoft, Ib. 90. Metcalf vs. Pulvertoft, 1 Ves. and Beam. 133. Otley vs. Manning, 9 East 59. Hill vs. Bishop of Exeter, 2 Taunt. 69, and Doe vs. James, 16 East 212. In these cases and several others, it is held that a purchaser for a valuable consideration will hold against a voluntary donee even though Jfe ipay have knowledge of the voluntary deed at' the time' of the purchase. And we are now to determiue whether' these decisions are to have a governing influenef:3pn our judgments. I have already expressed my opinion witlr regard to the respect due to the decisions 'of the English' Judges on questions which have not been thefsubjeeilof decisions in our Courts. And although this question rimy have been discussed, Ido not know that it has e^v-jer been decided, and I am induced to think that as far. as the question has been considered our Courts have entertained different views of the - statutes of Elizabeth from- -the ■ English Judges. When this case was formerly/lóeJ^re this Court the question of notice seemed to-constitute the most important feature of it. And in the case of 4&id-and Mitchell it is said that a deed is not void merely because- it is voluntary; it is so only against creditors ^nd subsequent-purchasers without notice. There possibly may be eases-where a subsequent purchaser would, not- be affected by-notice. If the voluntary gift be actually fraudulent, n® tice to the subsequent purchaser tjmniit do away the-fraud. If the voluntary deed.be a mer| pretence and no actual change of property be intended to take place, it still remains the property of the donor?'and may beeomib" the property of a subsequent purchaser even though he *309 may have notice of the prior deed. But I speak of cases unattended with any other evidence of fraud than what is to be inferred from the subsequent sale. If the decisions of the English Courts had come down to us supported and approved by the experience of the able Judges of that country and acquiesced in by our own we should not now perhaps be authorized to disregard them. But so far from coming with such recommendations, we find them depricated by all the eminent Judges of the present day. In the case of Buckle vs. Mitchell, the Master of the.Rolls says, “ I have great difficulty to persuade myself that the words of the statutes warranted or that the purposes of them required such a construction; for it is not easy to conceive how a purchaser can be defrauded by a settlement of which he has had notice before he makes the purchase, 18 Ves. 110.” In the case of Pulvertoft vs. Pulvertoft, Ib. 79, the Lord Chancellor observes, “ the construction put upon the statutes is singular, that a man paying what in other cases is called paying an obligation of nature should be considered as within the penalty of these acts.” In the case, of Otley vs. Manning, 9 East 70, Lord Ellenborough use’s the same language. Lord Mansfield, also, in the case of Boshet vs. Martyn, 1 New Rep. 332, expresses his regret, that such a decision had ever been made. I think, therefore, that the question is still open for o.ur consideration, and that we are at liberty to put our own construction upon these statutes, notwithstanding the unanimous decisions which have taken place upon them, in England and perhaps in the other States. The English Judges do not now follow their own decisions because they are consistent with the letter or spirit of the Statutes, but because-they have so long prevailed as to have become the rule of property and that to reverse them would be productive-of more mischief than to persist in an error. Chancel *310 lor Kent also says he inclines to the modern opinions expressed by the English Judges, but that a contrary doctrine has now taken too deep root to be shaken. But it cannot be said to have taken root here. Happily for us it has never been planted in this State. And the question now is whether we shall follow decisions which are admitted to be wrong or whether we shall profit by the experience of those distinguished Judges whose opinions are entitled to so much respect, and avoid their errors.— The professed object of the Statutes is to avoid deceitful and covenous conveyances, made with the intent and for the purpose of defrauding creditors and bona fide purchasers. But a deed intended to provide for those for whom we are bound by the obligations of nature to provide, is not fraudulent merely because it is voluntary; and he cannot be considered a bona fide purchaser who knowing of such voluntary conveyance combines with the donor thus dishonestly to defeat his own benevo’ent act. He cannot be defrauded who purchases with the knowledge of a pre-existing deed, but ought to be considered as an actor in the fraud rather than the voluntary donee. And such seemed to be the opinion of the court in the case of Kid & Mitchell above referred to.
It only remains then to be determined whether defendant’s testator knew of the plaintiff’s claim at the time of his purchase. I think there are strong reasons to believe that he had such notiee. And that was the principal ground on which the former new trial was granted. The cause was tried in the first instance before me. I was not satisfied with the instructions which I had given to the jury on that point, and was therefore in favour of granting a new trial. The case Las now undergone a secend investigation under all the advantages afforded by a former trial. The evidence of fraud was much stronger on the last trial than the first and the evidence of notice I think *311 uot so strong. It is probable that the Jury have had the benefit of all the light of which the case is susceptible, and having found two concurrent verdicts, I do not think the Court ought again to interfere. The motion is therefore refused. New trial refused.