13650

SHELTON v. SKYLAND STAGES, INC.

(169 S. E., 718)

*Messrs. Tobias & Turner* and *Jos. R. Bryson,* for appellant,

*Messrs. Mauldin & Love* and *Ben C. Thornton,* for respondents,

June 13, 1933.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The essential allegations of the complaint in this case were to the following effect:

"On or about the . . . . day of April, 1930," the plaintiff agreed to sell to J. L. Gilmer, agent for the defendant, and Gilmer, as such agent, agreed to purchase from the plaintiff, "a certain Certificate of Public Convenience and Necessity

over the highway leading from Greenville, South Carolina, to Hendersonville, North Carolina, and two Buick buses" at the agreed consideration of $37,400.00, payable $3,000.00 in cash, $14,500.00 upon delivery, and the sum of $17,500-.00 payable in twelve equal consecutive monthly notes of $1,458.33 each, and $2,400.00 in twelve consecutive monthly payments of $200.00 each; "that for a purpose well known to the plaintiff and the defendant this last item of Twenty-four Hundred ($2,400.00) Dollars was designated as salary, and made payable in twelve (12) consecutive monthly payments"; the agreement between plaintiff and Gilmer, the agent, was thereafter assigned and transferred by Gilmer to the defendant, and the defendant assumed all the obligations due, and to become due, to the plaintiff; the defendant had paid all of the consideration for such conveyance, except the last item of $2,400.00, which became due and payable $200-00 in May, 1930, and $200.00 each consecutive month thereafter through April, 1931; and no part of the last-mentioned sum of $2,400.00, either principal or interest, had been paid, although demand for payment had been made, which said sum so due represented a part of the purchase and sale price of the properties sold.

So far as it is necessary to determine the questions raised by the appeal, only certain matters set up in the answer of the defendant need be stated. The defendant denied the indebtedness alleged by the plaintiff, and expressly claimed that the $2,400.00 item was for salary to be paid to the plaintiff for certain services to be performed by him for the defendant, which services had not been rendered because of the physical incapacity of the plaintiff to perform them. To the answer was attached a copy of the contract between the parties and a copy of an "option agreement," entered into prior to the making of the contract. These instruments are conceded by the parties to be true copies.

The case was tried in the Court of Common Pleas of Greenville County, with his Honor, Judge Johnson, presid-

ing. The result was a verdict and judgment in favor of the plaintiff for the full amount of his demand, $2,400.00 and interest.

In the trial, the defendant took the position that the purchase price of the property sold to it by the plaintiff was definitely fixed by the written contract at the sum of $35,000.00, all of which had been paid; that the contract as to the purchase price was clear, certain, and unambiguous, and, accordingly, plaintiff could not recover the sum claimed by him as part of the consideration or the purchase price of the property; and that parol evidence to show the consideration to be other than the fixed sum of $35,000.00 was inadmissible.

On the other hand, the plaintiff contended that there was ambiguity in the contract; that the true consideration for the sale and purchase of the property was $37,400.00; that the item of $2,400.00, stated in the contract to be for salary, was, in fact, a part of the purchase price of the property; that the agent with whom he made the contract knew the circumstances and what was the real consideration of the purchase price; that the defendant corporation, for whom Gilmer, the agent, acted was later advised fully of the true consideration and ratified the agent's act; and that parol evidence to show the true consideration, $37,400.00, was admissible.

For some time the Circuit Judge was inclined to the view that there was no ambiguity in the contract, and indicated rulings favorable to the position of the defendant. But after a full study and consideration of the matter, he concluded that the contract was ambiguous. He, therefore, allowed the introduction of parol evidence to show the true consideration, as alleged by the plaintiff. He refused a motion for a directed verdict in favor of the defendant. The jury was instructed that, under the language of the contract, there was ambiguity in its terms as to the consideration, and it was

left to them to decide what was the real consideration of the purchase price of the property conveyed.

While there are several exceptions by the defendant in its appeal to this Court from the judgment adverse to it, only one real issue is before us : Was there error in the holdings of the trial Judge to the effect that there was such ambiguity in the contract, regarding the true consideration of the purchase price of the property, as to require the construction of its terms to be submitted to the jury?

To answer the stated question, it will be necessary to refer somewhat extendedly to the contract, which is rather lengthy, and a preceding "option agreement," made a part of the contract.

The option agreement, dated March 19, 1930, was expressly made a part of the contract, later entered into. Therein, the plaintiff acknowledged the receipt of the sum of $3,-000.00, "on account of and as part payment on the purchase of the Red Top Bus Line owned by the undersigned W. M. Shelton, seller, and running from Greenville, S. C., to Hendersonville, N. C., including all rights and franchises in North and South Carolina, and also including two 15-passenger 1927 Model Buick Buses now owned by the said seller."

In the second paragraph, there is contained the statement that "the balance of the purchase price to be $32,000.00, payable $14,500.00 in cash, on or before April 19th, 1930, and the balance of $17,500.00 in twelve equal monthly installments, with provision as to interest."

In the third paragraph, there is a provision that "all of the unpaid portion of the purchase price" is to be secured by a purchase-money mortgage on the property to be conveyed.

After setting forth language looking to the organization by the purchaser of a corporation to take title to the property and franchises conveyed, this clause appears: "It is further agreed that the seller will be given a position by the buyer, or by the corporation organized by him, for a period

of twelve months from date of closing this transaction, at a monthly salary of Two Hundred ($200.00) Dollars per month, payable monthly."

In the contract, dated April 11, 1930, after reciting the option agreement before mentioned, and providing that its "terms and conditions" are made a part of the contract, the instrument proceeds to set forth numerous agreements on the part of the parties. We quote, and call especial attention, by way of italics, to certain language depended upon by the respondent to sustain his position that the contract is ambiguous.

In the preamble, the contract is stated to be "In consideration of the premises, and *in further consideration of the conditions, terms, stipulations, covenants and payments hereinafter set forth."*

In Paragraph 1, the plaintiff, as "seller," does "sell, transfer, set-over and deliver" unto the purchaser, Gilmer, the agent, the personal property described, which he represents to be free of any lien or incumbrance whatsoever.

By the terms of Paragraph 2, the seller "in consideration of the aforesaid mentioned terms, *and other good and valuable consideration hereinafter more fully set forth,"* sells and delivers certain franchise rights to operate a motor bus line therein described.

In Paragraph 3, there is an acknowledgment on the part of the seller that "there has heretofore been paid" to him "as part of the consideration for the transfer of the property hereinabove described" the sum of $3,000.00. The following sentence contains the statement that "a further consideration" (evidently for the transfer of the property), is the payment coincident with the delivery of the agreement of the sum of $14,500.00 in cash. Next is a sentence which sets forth that "a further consideration for the sale and transfer of the property hereinabove described" is the delivery to the seller by the purchaser of twelve promissory notes of the purchaser, each in the sum of $1,458.33, pay-

able monthly. The total of these notes is the sum of $17,-499.96—intended, of course, to really represent $17,500.00, a slight difference of 4 cents, occurring to prevent fractional sums. In this paragraph, it plainly appears that the first payment of $3,000.00, the later payment of $14,500.00, and the total of the notes, $17,500.00, evidenced that the purchase price of the property sold is fixed at $35,000.00.

In Paragraph 4, there is a provision that the seller, or the holder of the promissory notes, shall have a lien on all the chattels described and sold until there is full payment of each and every of the described notes.

In Paragraph 5, the seller represents that all of the personal property conveyed by the instrument is free of incumbrances. And in Paragraph 6 there is a provision looking to an offset on the amount to become due on the promissory notes, in the event there is found later to be any claim against the property conveyed which the seller should pay.

In Paragraph 7, there is a statement to the effect that "as part of the transfer and sale," the seller binds himself not to compete in any way with the business of the purchaser, or his assigns, for a period of five years.

Paragraphs 9 and 10, not important here, relate to the sale being conditional upon the approval by the proper authorities of the States of North Carolina and South Carolina of the transfer of the seller's franchises to the purchaser, or his assigns.

Paragraph 8, which is of considerable importance, quoted in full, is as follows: "It is further understood and agreed that the said Seller is to be employed by the Purchaser, or his assign of the properties herein conveyed, *in connection with the operation of said line* for a period of not less than twelve (12) successive months and at a fixed salary of Twenty-four Hundred ($2,400.00) Dollars, per annum, payable at Two Hundred ($200.00) Dollars, monthly."

Because of the view we take, it is not necessary to detail at length the testimony in the case. A short statement will be

sufficient. The defendant sought to establish that the item of $2,400.00, characterized as "salary" in the contract, was actually to be the salary of the plaintiff for services to be rendered by him to the defendant in the operation of the line, and in no way was that item to be a part of the purchase price of the property. The gentleman interested in establishing the bus line, and forming a corporation to operate it, thought it would be advantageous to them to have the plaintiff connected with the line for at least twelve months. The minutes of the corporation of April 26, 1930, show that the plaintiff "was employed by the company to assist in the management of its transportation business in and around the City of Greenville, S. C., to perform such duties as should be assigned to him by the General Manager for a period of one year at a salary of $200.00 per month." The plaintiff, as defendant's witnesses swore, did not offer to perform any duties; the general manager, under whom he was to work, did not demand that he perform any service, because he had learned of the plaintiff's physical incapacity. A letter to the defendant only twenty-three days prior to the commencement of the suit from the plaintiff's attorney demanded the payment of "an item which you are due him for salary, amounting to $2,400.00," and Paragraph 8 of the contract was quoted in the letter.

The gist of the testimony of the plaintiff was that the item was actually a part of the consideration of the contract, and that he was not expected to perform any services. He explained the reason for the contract being written as it was, in answer to a question by the presiding Judge, in the following manner, quoting the plaintiff's own language: "* * * When Mr. Gilmer comes in the picture he says I represent this company, they forbid me paying over Thirty-five Thousand Dollars as the purchase price, but I will tell you what I will do, I will pay you Twelve Hundred Dollars a month; I mean Two Hundred Dollars a month for twelve months with the understanding that I call on you at any

time I would like for you to go with me before the Railroad Commission; that is the truth of the matter." The plaintiff denied any knowledge or information as to what the minutes of the corporation showed.

From the quoted testimony of the plaintiff, it seems that he was to perform some service to the defendant for a period of twelve months, during which time he was to be paid as salary the sum of $200.00 per month. That statement, however, was not entirely consistent with other testimony he gave, for formerly he had said, both on his direct and in his cross examination, that he was not to render any service whatever. As indicated, though, the question before us does not relate to the effect of the parol evidence in the case. We are concerned altogether with the effect of the written contract.

There is much ambiguity in the language of Paragraph 8 of the contract and the clause in the option agreement as to the services to be rendered to the defendant by the plaintiff in the employment mentioned. In the option agreement there is only the provision that the plaintiff would "be given a position by the buyer, or by the corporation organized by him," for a definite period of twelve months at a definitely fixed salary of $200.00 per month. But the "position" was not specified; nor were the duties to be performed by the plaintiff particularized.

Paragraph 8 of the contract is almost equally as indefinite as the clause in the option agreement. Both the salary and the time of employment are definitely fixed in that paragraph. The services to be performed by the plaintiff, however, were very indefinite. He was simply to be employed "in connection with the operation of said line." That language could well be harmonized with the plaintiff's testimony that when asked to do so, he was to go before the Railroad Commission in the interest of the corporation. It is in accord, also, with the evidence of the defendant that the plaintiff was expected to be of real assistance to the manager of the corporation in the operation of the line.

But with the exception of the ambiguity referred to in the clauses of both the option agreement and the later contract, we find no other ambiguity in the written instruments. The ambiguity as to the service to be performed by the plaintiff does not create an ambiguity as to the purchase price of the property the plaintiff sold and conveyed to the defendant. We have studied the contract carefully and have reached the conclusion that it is clear, certain, and definite as to the purchase price of the property, which was the sum of $35,000.00. The "option" expressly fixed the purchase price at $35,000.00, for it acknowledged the payment of $3,000.00 on the day it was signed, and stated "the balance" to be $32,000.00, $14,500.00 of that balance was to be paid on April 19, 1930, and the remainder of $17,500.00 in twelve equal monthly installments.

In Paragraph 3 of the contract, acknowledgment of the payment of $3,000.00 is made, and the receipt on the date of that instrument of $14,500.00 in cash. These total cash payments of $17,500.00 agreed absolutely with the cash to be paid as fixed in the option. In the same paragraph, reference is made to the execution and delivery by the purchaser to the plaintiff of the twelve monthly notes, representing the balance of the purchase price, $17,500.00.

The fact that the plaintiff, or the holder of the notes, was only to have a lien on the property sold and conveyed by him until the promissory notes were paid is further evidence that the $2,400.00 item, stated to be "salary," was not a part of the purchase price. The purpose of the provision as to the lien, stated in Paragraph 4 of the contract, was, of course, to secure plaintiff for the purchase price of the property. If the $2,400.00 item was a part of the purchase price, it would have been very easy for Paragraph 4 to have provided for a lien on the property until any and all indebtedness to the plaintiff was paid.

In several paragraphs of the contract appears the statement that the agreements are "as part of the consideration,"

or in language having a similar effect. But in Paragraph 8, there is no statement going to show that the agreement as to the "salary" is part of the consideration of the contract.

We do not think it worth while to review, or even attempt to discuss, the numerous authorities cited in the briefs of both the appellant and respondent. The trial Judge based his final conclusion upon the authority of *Peeples v. South Carolina Power Co.*, 166 S. C., 150, 164 S. E., 605. In that case, the principle that the construction of an ambiguous contract was for the jury was expressly held. This Court thought the language of the contract there involved was such as perhaps to sustain the theory upon which the plaintiff brought his suit, and, at least, that there was such ambiguity as to make the question at issue one for a jury to determine. The contract in that case, however, was not such an instrument as to be in any way compared to the contract in the case at bar. The two contracts related to entirely different subject-matters. In fact, little aid ordinarily may be received by comparing contracts for the purpose of ascertaining if ambiguities appear.

The law applicable to this case has been recently discussed fully in the case of *Gladden v. Keistler,* 141 S. C., 524, 140 S. E., 161. We quote the third syllabus, which contains the legal principles that govern here: "Parol testimony is admissible to show a different consideration from that expressed in a written instrument, when it was intended as a mere recital, since this would not otherwise change the terms of the written agreement, but it is not admissible when the consideration is contractual, as in that event such testimony would alter the force and effect of the writing in other respects."

The consideration for the purchase price of the property sold and conveyed in this case, $35,000.00, was plainly "contractual." All the language of the two written instruments shows that definitely.

It is our conclusion, therefore, that the learned trial Judge committed error when he held that the contract, as to the purchase price, was ambiguous, and that testimony offered by the plaintiff to show the consideration to be otherwise than what the contract stated was improperly admitted. It follows that the defendant, with the rejection of this testimony, was entitled to a directed verdict in its favor.

That there may be no misunderstanding, we think it appropriate to say that the decision of this Court in no wise affects the right of the plaintiff, if such right he has, to sue for any sum which may be due him for "salary," under the terms of the contract.

The judgment of this Court is that the judgment below be, and the same is hereby, reversed, and that the cause be remanded to the Court of Common Pleas of Greenville County for the entry of a verdict and judgment in favor of the defendant as provided in Rule 27 of this Court.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.