556 S.E.2d 718

**COMMERCE CENTER OF GREENVILLE, INC., Respondent,**

v.

**W. POWERS McELVEEN & ASSOCIATES, INC., a South Carolina Corporation, and McDevitt Street Bovis, Inc., Defendants, of whom McDevitt Street Bovis, Inc. is, Appellant.**

No. 3412.

Court of Appeals of South Carolina.

Heard Nov. 6, 2001.

Decided Nov. 19, 2001.

546

Robert L. Widener, of McNair Law Firm, of Columbia, for appellant.

Henry W. Brown, of Nexsen, Pruet, Jacobs & Pollard, of Columbia, for respondent.

ANDERSON, Judge:

In this construction litigation case, W. Powers McElveen & Associates ("Architect") and McDevitt Street Bovis, Inc. ("Contractor") were found 20% and 80% liable, respectively, for the diminution in value of a building owned and subsequently sold by Commerce Center of Greenville, Inc. ("Commerce Center"). Contractor filed post-trial motions challenging various evidentiary rulings. These motions were denied. Contractor appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

In April 1997, Commerce Center acquired by assignment all of the partnership interests of Park Place Associates ("Associates"). Associates' interests included a five-story building known as the Park Place located in West Columbia. At the time of this transaction, Associates had two separate actions pending against Architect[1] and Contractor[2] for recovery of damages for certain defects in the design and construction of Park Place. Specifically, Associates complained that the windows on all but the first floor of the building leaked.

It was undisputed that an improperly constructed joint will fail prematurely and start leaking. The parties also agreed the windows leaked because of defective design and the poor workmanship of Contractor's window installation subcontractor. Contractor, however, maintained that the design defects, not Contractor's construction defects, were the *greater* cause of Commerce Center's damages.

The windows were sealed with a "conventional caulk joint." A conventional caulk joint is an industry term which describes a standard method of construction and type of seal used around windows. When a window is placed in its respective

---

1. The complaint for Associates v. Architect was filed July 25, 1994.

2. The complaint for Associates v. Contractor was filed December 10, 1996. Contractor subsequently initiated a third party complaint against its window installation subcontractor. This third party defendant was not a party to the litigation brought by Associates nor is it a party to this appeal.

   Commerce Center, as the assignee of Associates' interests, later moved to consolidate Associates' two actions. On February 5, 1998, Commerce Center's motion was granted.

opening, it is positioned and held in place with plastic, horse-shoe-shaped shims so that a space or gap of not less than one-quarter of an inch and not more than three-quarters of an inch is left between the cladding material, which is the material on the building's exterior, and the top edge or the bottom edge of the window system. Next, a foam material called backer rod is inserted into the gap. A sealant-like caulk is then pressed into the gap on top of the backer rod. The backer rod limits the depth of the sealant joint (which is the in-and-out dimension of the joint) and allows the caulk to be pressed into its proper one-to-one ratio of depth to width. A proper ratio ensures a water-tight and lasting joint.

Approximately two weeks after acquiring the building, Commerce Center sold Park Place to Liberty Property Limited Partnership ("LPLP"). Commerce Center continued the actions initiated by Associates. In its pleadings, Commerce Center alleged that it was required to discount the sale price by $175,000 because of the building's defects.[3]

At trial, Commerce Center elicited testimony that Contractor did not install the windows properly in that almost no backer rod was used, the joint spacing was inconsistent and frequently of improper width and depth, the fiberglass mesh under the cladding system was exposed in parts, and the shims were the improper size, misplaced, and often protruding into the caulking compound. Contractor acknowledged that essentially no backer rod was used on the building. L.G. Lewis, Jr., an expert called by Commerce Center, testified that the design of the windows did not deviate from accepted architectural practice and it would have performed "satisfactory" if properly executed.

On cross examination, Robert T. Coleman, III, Commerce Center's president, acknowledged that in 1996, Commerce Center believed a cause of the leaks, but not the exclusive cause, was a design defect. He also admitted that Commerce Center would have performed repairs to the building to

---

3. Commerce Center entered into its contract to sell Park Place to LPLP on March 5, 1997. On its schedules, the property was valued at $3,992,000. Upon notice of the construction defects, because LPLP did not want to buy a leaking building, subsequent negotiations reduced the selling price by $175,000.

change the design configuration of the window head even if backer rod had been installed by Contractor.

Commerce Center additionally proffered testimony of necessary remedial remedies to correct the window leaks. Simply adding new caulk would not act as a permanent fix to the leaking problem. Instead, the better, long-term solution was to install flashing across the top of the windows. Mark F. Williams, an expert retained by Commerce Center to design a solution for the leaks, testified about a remedial flashing design he devised. Williams testified his solution did not modify the window design; rather, it involved cutting an approximate eight-inch portion of the cladding away from above the windows and installing a metal flashing or drip edge around the entire building. This solution was considered the most cost-effective because it did not involve removing, repositioning, and reinstalling every window in the building. Lewis opined Williams' remedial solution was "reasonable." Although Commerce Center did not implement these design changes, LPLP did. There is no indication in the record that the building has leaked since renovation.

As part of its pre-trial discovery, in December 1997, Contractor submitted five questions to Associates in a Rule 36, SCRCP request to admit. Commerce Center, answering as assignee of Associates' interests, admitted the construction defects complained of consisted of only the omission of backer rod and improper joint size at the window head.[4] However,

---

4. Request to admit numbers one and two read, in part:

   1. Admit that Park Place Associates contends that the Problem is a design defect which Park Place Associates contends is the responsibility of [Architect].
    *ANSWER:*
    This Request is admitted in part. Commerce Center [as assignee of all of the partnership interest of Park Place Associates] contends that the problem is in part caused by a design defect. Commerce Center contends that construction defects, consisting of omission of a backer rod and improper joint size at the window head to accommodate sealant and backer rod contributed to the leaking problems.
   2. Admit that the only contention of a breach of contract by the Park Place Associates' agent, [Contractor], is the alleged failure by [Contractor] to install a backer rod and caulk joints between the windows and the building skin.
    *ANSWER:*

Commerce Center specifically reserved its right "to supplement this response to the extent further deficiencies are discovered." Commerce Center further admitted it had turned down Contractor's offer to pay for recaulking the building and that it would have performed repairs to the building and changed the design configuration of the window head even if backer rod had been present.[5]

Contractor argued the substance of Commerce Center's admissions to the jury. It used a blow-up of admission number four as demonstrative evidence during its opening arguments and it published in part and argued the substance of the remaining admissions, particularly admission number two, during cross examination of Lewis. Additionally, Contractor referenced the admissions during its closing argument.

Contractor sought on at least three occasions to introduce the admissions into evidence. At the close of Commerce Center's case, Contractor also moved for a directed verdict based upon admission number two because the admission did not acknowledge any construction deficiencies other than the lack of backer rod and improper joint spacing. The court denied Contractor's motion. Concurrently, however, the trial judge granted Commerce Center's oral motion to amend its admissions to comport with the additional testimony of construction defects involving the shims. Over Contractor's objections, the trial judge found no prejudice in allowing this amendment.

---

Commerce Center admits request number 2 to the extent that it [sic] a breach of contract occurred by omission of backer rod, and failure to create joint width for the installation of a backer rod and sealant. This was the responsibility of [Contractor] pursuant to its contract. [Commerce Center] reserves the right to supplement this response to the extent further deficiencies are discovered.

**5.** Request to admit number four reads, in part:

4. Admit that even if [Contractor] had recaulked the building using the appropriate backer rod, the redesign and repairs being performed by Park Place Associates to correct the problem would have still been necessary.

*ANSWER:*

[Commerce Center] admits that it would have performed repairs to the building to change the design configuration of the window head even if backer rod had been present.

Contractor also attempted to introduce two letters sent from Commerce Center's attorney to Contractor and Architect dated June 25 and July 25, 1996, respectively, into evidence. The trial judge did not admit either letter, finding both documents related to settlement negotiations. The first letter explained Commerce Center had discovered the cause of the water leaks:

> The principal problem relates to the configuration of the window heads, particularly at the curved wall and the placement of the sealing joint flush with the exterior surface .... It is apparent, therefore, that in order to produce a water tight building that will allow sealant joints to last the industry period of time, that the window heads need to be reconfigured.

The second letter reiterated Commerce Center's initial findings:

> The revision of the window head detail is necessary to ensure the long term water tightness of the building. Periodic caulking is not going to be sufficient to maintain the integrity of the exterior skin of the building.

The jury returned a verdict in favor of Commerce Center for the entire $175,000 requested for its breach of warranty and breach of contract claims. The jury found Architect liable in the amount of $35,000 (20% at fault) and Contractor liable in the amount of $140,000 (80% at fault). Contractor filed post-trial motions for directed verdict, JNOV, reconsideration, and new trial. The trial court denied these motions. Contractor appeals.

## *LAW/ANALYSIS*

Contractor states in its brief that "[t]he overriding question in this appeal is whether the trial court's exclusion of evidence, allowance of an amendment to a request to admit, and refusal to charge the jury on requests to admit deprived Contractor of a fair trial on the question of causation and apportionment of damages as between Contractor and Architect." Essentially, Contractor argues the trial court's alleged improper evidentiary restrictions in this document-intensive case caused the jury to reach an improper allocation of fault between Contractor and Architect. We disagree.

### I. Requests to Admit

## A. Judicial Treatment of Admissions Made Pursuant to Rule 36, SCRCP

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the general rules of discovery that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. Rule 36(a), SCRCP. The efficacy of these admissions is akin to the doctrine of judicial estoppel: [6] an admission precludes the admitting party from arguing facts at trial contrary to its responses to a request to admit, absent an amendment to or revocation of the admission as allowed under the rules. *See* Rule 36(b), SCRCP ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."); *cf. Adams v. Orr*, 260 S.C. 92, 194 S.E.2d 232, (1973) (affirming trial judge's refusal to hold that plaintiff's lack of responses to several of defendant's requests to admit were admitted as binding fact because the requests to admit, as worded, were ambiguous and subject to more than one reasonable interpretation).

Admissions under Rule 36 are treated as admissions in pleadings. *Muller v. Myrtle Beach Golf & Yacht Club*, 303 S.C. 137, 399 S.E.2d 430 (Ct.App.1990), *overruled on other grounds by Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 532 S.E.2d 868 (2000); *see also* James F. Flanagan,

---

**6.** Judicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same litigation. The doctrine's function is to protect the integrity of the judicial process or the integrity of the courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries. The doctrine generally applies only to inconsistent statements of fact. *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 489 S.E.2d 472 (1997) (adopting the doctrine of judicial estoppel as it relates to matters of fact in South Carolina); *Quinn v. The Sharon Corporation*, 343 S.C. 411, 416, 540 S.E.2d 474, 476 (Ct.App.2000) (Anderson, J., concurring) ("A court must be able to rely on the statements made by the parties because truth is the bedrock of justice. Therefore, a litigant cannot 'blow both hot and cold.' Under the doctrine of judicial estoppel, a party that has assumed a particular position in a judicial proceeding, via its pleadings, statements, or contentions made under oath, is prohibited from adopting an inconsistent posture in subsequent proceedings.") (citations omitted).

*South Carolina Civil Procedure* 304 (1996) ("Admissions are similar to pleadings."); *Pulte Home Corp. v. Woodland Nursery & Landscapes, Inc.,* 230 Ga.App. 455, 496 S.E.2d 546, 548 (1998) ("In form and substance [a response to a request to admit] is comparable to an admission in pleadings or stipulation of facts and as such is generally regarded as a judicial admission rather than evidentiary admission of a party.").

■ South Carolina's Rule 36 is substantively similar to the federal rule. However, Rule 43, unlike its federal counterpart, specifically states that "pleadings shall not be submitted to the jury for its deliberations." Rule 43(g), SCRCP. Thus, in our state, requests to admit are not submitted to the jury; rather, the proper course of action is to publish the admissions to the jury. *Id.* ("Counsel for a party may read his pleadings to the jury or make a statement to the jury of the facts alleged in the pleadings and the theory of his case.") *cf. Tuomey Reg'l Med. Ctr. v. McIntosh,* 315 S.C. 189, 191, 432 S.E.2d 485, 487 (1985) ("Rule 36 SCRCP allows amendment of an admission in the discretion of the court when 'the merits of the action will be subserved thereby and the party who obtained the admissions fails to satisfy the court that withdrawal or amendment will prejudice him . . . .' Once an answer to a Request for Admissions is amended under Rule 36, both the initial answer and the amended answer may be published to the jury. The jury may consider the initial answers as evidence, while the party who made such answers 'is free to explain why it was made and [amended].' ").

■ Here, Contractor did not request to publish Commerce Center's admissions to the jury. Instead, it sought to enter the admissions into evidence.[7] Despite the absence of a request to publish, the trial judge allowed Contractor to argue the admissions to the jury. Contractor capitalized on this ruling by arguing the substance of the admissions to the jury and presenting the answer to admission number four during both its opening and closing arguments. We find no error.

7. Contractor reiterates this desire in its brief wherein its states: "When Contractor sought to introduce the Requests to Admit into evidence . . . ." and "Contractor renewed its request to introduce these matters into evidence . . . ."

## B. Jury Charge

Contractor argues the trial judge denied its alternative request that the jury be instructed that the responses to the requests to admit were conclusive facts in the case. We find no merit in this contention.

Generally, a party is entitled to a jury charge regarding requests to admit which were published to the jury. *See McIntosh,* 315 S.C. at 192, 432 S.E.2d at 487 (holding trial court's general charge concerning requests for admissions was a correct statement of law). Here, Contractor argued at trial that "either I can introduce [the requests to admit] as an exhibit or you can tell the jury that it's like a fact." Contractor, however, did not expand on this statement. The record does not contain the full charge to the jury nor does it show that the trial judge refused to present any requested charges to the jury. In fact, there is no indication in the record that the jury was charged with an incorrect expression of the law. *See State v. Buckner,* 341 S.C. 241, 534 S.E.2d 15 (Ct.App. 2000), *cert. denied* (holding jury charge is proper if, as a whole, it is free from error and reflects the current and correct law of South Carolina). Since the record does not contain any proposed jury charges and since the record does not reflect that Contractor proffered any proposed charges for the jury, this issue is not preserved. *See Wells v. Halyard,* 341 S.C. 234, 533 S.E.2d 341 (Ct.App.2000) (upholding jury charge given by trial judge where record was devoid of appellant's request for a particular charge or the language of the proposed charge that appellant contended judge refused to give); *see also McIntosh,* 315 S.C. at 192, 432 S.E.2d at 487 ("The court gave a general charge concerning requests for admissions, which was a correct statement of law. If [defendant] wanted a further charge as to the effect of the amended answers, it was incumbent upon it to specifically proffer such a charge. However, [defendant] failed to proffer an additional charge, either at trial or on appeal.") (citation omitted).

## C. Amendment of Requests to Admit

Finally, Contractor argues the trial judge erred in allowing Commerce Center to amend its answers to the requests to admit. That is, Contractor argues Commerce Center should

be estopped from asserting any breaches other than the two defects asserted in admission number two which acknowledges "only" the backer rod and caulking were defective. We disagree.

The trial court may allow a party to amend or withdraw its answers to a request to admit when: (1) the presentation of the merits is furthered by the amendment; and (2) the party who obtained the admission cannot demonstrate prejudice because of the amendment. Rule 36(b), SCRCP, *cited in Barber v. Hobbs*, 313 S.C. 319, 437 S.E.2d 409 (Ct.App.1993). Prior to the oral amendment of Commerce Center's admissions, Commerce Center proffered testimony, without objection, that the shims were both the wrong size and were improperly positioned. Williams testified that he observed shims that protruded into the sealant. Bob Broom, assistant vice-president and project manager for Architect, and Lewis both averred that the shims used by Contractor were too long. Moreover, the testimony at the trial was detailed, specific, and voluminous as to the proper method for installing the windows. Clearly the positioning of the windows with the shims affects the spacing of the joints. The window installation required more than just caulk and backer rod. In fact, the windows, backer rod, shims, and sealant are used in conjunction to install the windows. The amendment of Commerce Center's admissions did nothing more than conform the admissions to the consistent testimony offered at trial.

Nor was Contractor prejudiced by this amendment. The use of shims is clearly part and parcel with the installation of the windows. Michael S. McMillon, project superintendent for Contractor, agreed that the backer rod's absence and protruding shims would be clear errors in construction which would likely contribute to the sealant joints' failure. Moreover, Contractor admits it received an inspection report in 1994 prepared by its own expert, George W. McGee, who was hired by Contractor to investigate the window leaks. Jack W. Long, a senior vice-president of Contractor, stated Contractor had understood since at least 1994 that its workmanship was at issue as a cause of leaks. Given Commerce Center's reservation to amend its answer and because Contractor was on notice before the action against it was initiated that the quality

of its work was called into question, we find no prejudice in the trial judge's ruling.

Contractor cites *Sunvillas Homeowners Association v. Square D Company,* 301 S.C. 330, 391 S.E.2d 868 (Ct.App. 1990), for the proposition that any amendment to the requests to admit was invalid without Contractor's consent. This case is clearly distinguishable because it involves an attempt to add a new theory of recovery to the complaint after plaintiff rested his case. In the case *sub judice,* Commerce Center has maintained throughout the proceedings that the various construction defects by Contractor contributed to the leaks. Commerce Center did not allege a new cause of action nor did it present an unforseen argument late in the proceedings.

## II. Admissibility of Commerce Center's June 25 and July 26, 1996, Letters

The courts favor compromise; accordingly, evidence relating to settlements is generally not admissible to prove liability. Rule 408, SCRE; *Hunter v. Hyder,* 236 S.C. 378, 114 S.E.2d 493 (1960); *Hall v. Palmetto Enterprises II, Inc., of Clinton,* 282 S.C. 87, 317 S.E.2d 140 (Ct.App.1984) (holding that an offer to compromise is generally not admissible as an admission).

The June 25, 1996, letter from Commerce Center's counsel to Contractor and Architect concluded:

I would like to schedule a meeting with everyone involved as soon as possible ... so that we can discuss this proposed repair and determine how it should be implemented between [Architect] and [Contractor].

Likewise, the July 25, 1996, letter reiterated the request to negotiate:

I suggested a meeting in my prior letter to discuss this problem and see if a resolution can be reached .... I would be most appreciative if you would check your calendars and find a mutually agreeable day that is suitable to meet in Columbia to discuss this repair and resolution without the necessity of continued litigation.

These letters reference an attempt to schedule a meeting to resolve the case. Thus, on their face, these letters present an attempt to curb further litigation. Clearly, the

verbiage of the letters relates to actual settlement negotiations or, at the least, to a settlement relationship between the parties. Simply because the letters were sent by Commerce Center's predecessor in interest does not remove the essential tone for settlement from the letters.

Even assuming, *arguendo,* that redacted versions of the letters should have been admitted by the trial judge, we find no prejudice. It is well settled that the admission and rejection of testimony are matters largely within the trial court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion. *Pike v. South Carolina Dep't of Transp.,* 343 S.C. 224, 540 S.E.2d 87 (2000); *see also R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 540 S.E.2d 113 (Ct.App.2000), *cert. granted* (holding the court's ruling to admit or exclude evidence will only be reversed if it constituted an abuse of discretion amounting to an error of law). In order for this Court to reverse a case based on the erroneous admission or exclusion of evidence, prejudice must be shown. *Hanahan v. Simpson,* 326 S.C. 140, 485 S.E.2d 903 (1997).

The purported admissions in the letters are merely cumulative of the testimony at trial. Generally, there is no abuse of discretion where the excluded testimony is merely cumulative of other evidence proffered to the jury. *See Ott v. Pittman,* 320 S.C. 72, 79, 463 S.E.2d 101, 105 (Ct.App.1995) (upholding trial judge's decision to exclude particular witness testimony, which the Court of Appeals characterized "cumulative to that of other witnesses"). Accordingly, we find no error. Here, Williams, Lewis and McGee all testified that merely recaulking the joints would not be enough. Instead, they declared that the window head design required some revisions or reworking. Williams and McGee further opined that the poor design and workmanship mandated some form of revision of the window heads. Lewis opined that the construction defects alone required a revision. Thus, the jury heard ample evidence that the window heads had to be reconfigured to solve the leaking problem. Moreover, although the trial judge did not allow the letters into evidence, he allowed Contractor to use them to refresh the memories of Commerce Center's witnesses. We find no abuse of discretion and no

prejudice arising from denying the admission of these letters into evidence.

## *CONCLUSION*

For the foregoing reasons, the decision of the trial judge is **AFFIRMED.**

CONNOR and HOWARD, JJ., concur.