THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James C. Adams,       
Respondent,
 
 
 

v.

 
 
 
Gene David Cook,       
Appellant.
 
 
 

Appeal From Hampton County
J. Michael Baxley, Circuit Court Judge

Unpublished Opinion No. 2003-UP-469
Submitted June 9, 2003  Filed July 
 24, 2003

AFFIRMED

 
 
 
Lee S. Bowers, of Estill, for Appellant.
Kathy D. Lindsay, of Beaufort and R. Alexander Murdaugh, of 
 Hampton, for Respondent.
 
 
 

PER CURIAM:  James C. Adams brought this 
 action against Gene David Cook following an automobile accident.  A jury returned 
 a verdict in favor of Adams in the amount of $60,451.17.  Cook appeals, arguing 
 the trial judge erred in (1) refusing his request to strike a new jury; (2) 
 charging the mortality tables; and (3) admitting the appraisal of Adams vehicle.  
 We affirm. [1] 
Adams brought this action seeking actual and punitive 
 damages for Cooks alleged negligence in a rear-end collision in which Cooks 
 vehicle struck Adams vehicle.  The parties struck a jury before the first day 
 of trial.  On the morning the trial began, Adams announced that he had associated 
 Alex Murdaugh, of the law firm of Peters, Murdaugh, Parker, Eltzroth & Detrick 
 (Murdaugh firm), as co-counsel.  Cook objected to new counsel being added, as 
 a partner and employee of the Murdaugh firm had been in the jury pool.  The 
 trial court overruled the objection, but questioned the jurors regarding possible 
 disqualifications as a precaution.  Satisfied the entire jury was qualified, 
 the court then proceeded with the trial.  Later, Cook associated Lee S. Bowers, 
 who was distantly related to a juror.  Adams counsel reported and the court 
 stated that Cook withdrew his previous objection to the Murdaugh firm being 
 involved in the case in return for Adams not objecting to Bowers addition as 
 defense counsel.  
At trial, Cook admitted rear-ending Adams vehicle 
 while Adams was stopped in traffic.  The property damage to Adams vehicle was 
 less than $1,000.  Adams, who was 72 years old at the time of the collision, 
 submitted evidence that he had incurred medical expenses of $6,451.17 as a result 
 of the accident.  The jury returned a verdict for Adams in the amount of $60,451.17.  

LAW/ANALYSIS
I.  Jury Panel
Cook argues the trial court erred 
 in refusing to allow a new jury to be struck when Alex Murdaugh was added as 
 Adams counsel.  We disagree.  
The jury panel was struck on Monday, November 
 5, 2001, after the entire jury panel was qualified, and after a jury was struck 
 in the first case on the roster, Isham v. Gadson.  Because the attorneys 
 in Isham were Clyde A. Elzroth, a partner in the Murdaugh firm, 
 and Lee S. Bowers, the venire was qualified as to those two attorneys and their 
 firms.  In the jury venire were Randolph Murdaugh, IV, a partner in the Murdaugh 
 firm, as well as Jan Pulaski, an employee of the Murdaugh firm.  Also in the 
 pool were James Bowers and Coy Bowers, an uncle and a cousin of Lee Bowers.  
 Randolph Murdaugh, Pulaski, and James Bowers were disqualified from serving 
 in the Isham case because of their relationships with attorneys trying 
 the case.  Other than these four jurors, no other jurors were disqualified from 
 the jury venire for any reason in the Isham trial.  
After the Isham jury was struck, 
 counsel for Cook and Adams agreed the venire would be qualified based on the 
 same voir dire used in the Isham case, as well as additional voir 
 dire specific to their case.  At the time the jury was struck, Adams was 
 represented by Kathy Lindsay, and Cook was represented by Margaret Urbanic. 
  Randolph Murdaugh, James Bowers, and Pulaski were all qualified for the case 
 and drawn as part of the twenty-member panel.  Cook struck Murdaugh and Pulaski.  
 Bowers was seated on the jury.  
The case was called for trial on Wednesday, 
 November 7, 2001.  Prior to trial, Adams informed the court that Alexander Murdaugh, 
 brother of Randolph Murdaugh and also a partner in the Murdaugh firm, had been 
 associated as co-counsel after the jury had been selected.  Cook objected to 
 Murdaughs association.  The trial judge overruled the objection, stating that 
 [Alexander Murdaughs association] occurred after the strike and so therefore 
 I do not find that it is a violation of the rules or prejudicial to the defendant[.]  
 The court conducted additional voir dire before swearing the jury and 
 found none of the jurors were disqualified.  
The case proceeded to trial.  After Adams 
 testimony, the following colloquy occurred outside of the presence of the jury:  

THE COURT:  I need to ask, what is the status of the objection 
 which the defendant previously raised to the jury panel.
MR. MURDAUGH:  Your Honor, Ms. Urbanic and I just spoke.  
 What we are going to do is in lieu of me making an objection to Mr. Bowers 
 appearance, shes going to waive her earlier objection to there being any issues 
 about that.
THE COURT:  All right.  Let me state for the record in the 
 event of appellate review what has happened during the testimony of the plaintiff 
 is that Attorney Lee Bowers has joined the defense in the trial of this case.  
 Mr. Bowers may be distantly related to one of the jurors whose last name is 
 also Bowers and there has been, after discussion at the Bench, a decision made 
 by the defendant to withdraw her previous objection to the Murdaugh Firm being 
 involved in the case and how that affected the jury pool.  And in return, the 
 plaintiff has determined not to object to Mr. Bowers being added as defense 
 counsel.  And with that understanding, the Court accepts and we will go forward.
Now is there anything further that we need to resolve 
 prior to the conclusion of the break and the jury coming back?  From the plaintiff?
MR. MURDAUGH:  No, sir, we only have Dr. Johnsons read testimony 
 which should take less than ten minutes I would presume.
THE COURT:  [A]ll right, from the defendant?
MS. URBANIC:  No, sir, your Honor.

With this statement on the record, Cook 
 waived his prior objection in exchange for Adams not objecting to Cooks association 
 of Lee Bowers, who was related to a member of the jury.  An objection that is 
 withdrawn by a waiver is not preserved for our review.  See Harris 
 v. Campbell, 293 S.C. 85, 88, 358 S.E.2d 719, 721 (Ct. App. 1987) (party 
 who explicitly withdrew an objection waived the right to the objection on appeal).  
 Because the objection was withdrawn, we decline to address this issue.  
II.  Mortality Tables Charge
As part of his instructions, the trial judge charged 
 the South Carolina Life Expectancy Tables, S.C. Code Ann. § 19-1-150 (1985).  
 Cook contends Adams medical testimony cannot support permanency and thus the 
 charge was improper.  We disagree. 
A trial judge may properly charge the life expectancy 
 tables to the jury in a personal injury action when there is evidence of permanent 
 injury.  Johnston v. Aiken Auto Parts, 311 S.C. 285, 288, 428 S.E.2d 
 737, 739 (Ct. App. 1993).  In Johnston, we found there was evidence of 
 permanent injury based on Johnstons testimony that his right knee never has 
 gotten right and [n]othing can be done about the knee because [i]ts too 
 badly damaged.  Id. at 288-89, 428 S.E.2d at 739 (alterations in original).  

Similarly, in the present case, Adams testified 
 that he did not have any neck pain or soreness or stiffness before the wreck.  
 He stated was still taking medication for his neck at the time of trial.  He 
 testified he continues to do physical therapy three times a week at home.  He 
 also testified he was still suffering from injuries from the accident and would 
 continue to suffer from them into the future.  Adams further explained he did 
 not know of any procedure that would cure his neck, and his doctor did not provide 
 any such testimony.  Johnston indicates medical testimony is not 
 required to charge the mortality tables and a partys own testimony on permanency 
 can be sufficient to support the charge.  Thus, Adams testimony was sufficient 
 to create a jury question on the issue of permanency, and the trial judge properly 
 charged the mortality tables.  
III.  Evidence of Value of Adams Vehicle
Cook argues the trial court erred 
 in admitting the appraisal of Adams vehicle because it was hearsay.  We disagree.
 The admission of evidence is a matter 
 addressed to the sound discretion of the trial judge.  Absent clear abuse of 
 discretion amounting to an error of law, the trial courts ruling will not be 
 disturbed on appeal.  Creed v. City of Columbia, 310 S.C. 342, 344, 
 426 S.E.2d 785, 786 (1993) (citing Hofer v. St. Clair, 298 S.C. 
 503, 381 S.E.2d 736 (1989)).  
In his opening statement, Adams counsel 
 discussed the repairs, stating, [i]t was a very minor accident, it cost under 
 $1,000 for the property damage.  During direct examination, Adams was asked 
 about the cost of repairs to his car.  He testified that the repair bills were 
 around $1,000.  On cross-examination, he also testified there was around $1,000 
 worth of damage to his car.  After Cooks testimony, Cook rested and the court 
 asked Adams if he had anything in reply.  The parties approached the bench at 
 this point for a bench conference.  Afterwards, the court announced the following:

THE COURT:  All right, ladies and gentleman, thank you, 
 while we were resolving an issue about a piece of evidence and Im going to 
 have a stipulation that has been reached here that Im going to report to you 
 which will avoid calling any further witness.
There has been a stipulation among the parties that 
 the amount of the property damages to the plaintiffs vehicle, the repair amount 
 was $936.62.  The plaintiff has offered plaintiffs exhibit #3 which was actually 
 the bill that was received for the property damage.  There has been an objection 
 by the defendant that that is, in effect, a hearsay document but that objection 
 has been overruled but theres been an agreement by the parties that plaintiffs 
 exhibit #3 will be part of your evidence package whenever you report back to 
 the jury room for your deliberations.  Lets get it marked.
(WHEREUPON, Property damage bill was entered and 
 marked as plaintiffs exhibit #3.)
THE COURT:  Now, did I memorialize that correctly, plaintiff?
MR. MURDAUGH:  Yes, sir.
THE COURT:  Defendant?
MS. URBANIC:  Yes, sir.

This statement on the record indicates 
 the parties stipulated to the amount of damages and agreed that the repair bill 
 would be made an exhibit.  Further, the repair bill is merely cumulative to 
 Adams own testimony that the property damage was around $1,000.  Because this 
 evidence is cumulative to Adams testimony, we find any error harmless.  See 
 State v. Griffin, 339 S.C. 74, 77-78, 528 S.E.2d 668, 670 (2000) (There 
 is no reversible error in the admission of evidence that is cumulative to other 
 evidence properly admitted.).  Moreover, [i]n order for this Court to reverse 
 a case based on the erroneous admission or exclusion of evidence, prejudice 
 must be shown.  Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen 
 & Assocs., Inc., 347 S.C. 545, 559, 556 S.E.2d 718, 726 (Ct. App. 2001) 
 (citing Hanahan v. Simpson, 326 S.C. 140, 485 S.E.2d 903 (1997)).  
 We find the prejudice claimed by Cook, that the bill may have made the property 
 damage look worse that it really was, does not exist, as the bill indicated 
 the repairs were only $936.62, less than the around $1,000 that had been testified 
 to earlier.
 AFFIRMED.
 HEARN, C.J., CONNOR and STILWELL, JJ., concur.

 
 
 [1]        We decide this case without oral argument pursuant to Rule 
 215, SCACR.