THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Charles E. McMillan, Appellant,
 
 
 

v.

 
 
 
 Peter J. Evans d/b/a/ Stella Nova, Respondent.
 
 
 

Appeal from Charleston County
Mikell R. Scarborough, Master in Equity

Unpublished Opinion No. 2005-UP-581
Submitted November 1, 2005 Filed November 16, 2005

AFFIRMED

 
 
 
 Frank M. Cisa, of Mt. Pleasant for Appellant.
 Joseph S. Mendelsohn, of Charleston, and Daphne A. Burns, of Mt. Pleasant, for Respondent.
 
 
 

PER CURIAM:  In this action to recover on a promissory note, Charles E. McMillan appeals the ruling of the Master in Equity granting a directed verdict in favor of Peter J. Evans d/b/a Stella Nova.  We affirm.[1]
Facts
On May 3, 2002, Bruce McMillan filed for Chapter 13 bankruptcy.  At the time, he owed his brother, Charles Eddie McMillan, $65,000.00.  That amount was not reported on the Schedule of Creditors Holding Unsecured Priority Claims.  Nonetheless, both Eddie McMillan and Bruce McMillan agreed that Bruce was to pay his brother back when financially solvent.
After he filed for bankruptcy, Bruce McMillan approached Peter Evans, the founder and operator of Stella Nova, about selling a parcel of land located in Summerville.  The land appraised for $295,000.00, but Bruce was willing to sell it to Evans for $265,000.00.  Bruce maintained that Evans, for unspecified reasons, could only get a loan from the bank in the amount of $200,000.00.  Therefore, Bruce suggested they create a separate promissory note in the amount of $65,000.00.  However, Evans stated that Bruce wanted the bank to list $200,000.00 as the selling price, and that he could have received a loan for the full amount of $265,000.00.  Ultimately, the parties sought and gained the permission of the bankruptcy court to sell the property for $200,000.00.  Afterwards, they drafted a promissory note for the $65,000.00.
Bruce McMillan wanted Evans to pay the $65,000.00 promissory note to his brother, Eddie McMillan.  By doing so, Bruce would satisfy his debt to Eddie.  Eventually, Evans and Bruce McMillan decided on a promissory note in the amount of $57,870.00.  The difference in the price was attributed to Evans paying for the appraisal and getting credit for rent.  Even though Bruce McMillan and Evans were making plans for Evans to pay Eddie McMillan, Evans and Eddie had not met or spoken.
On July 11, 2002, Evans and Bruce McMillan signed the promissory note outside of the presence of any attorneys.  Thereafter, they proceeded to Attorney Joe Mendlesohns office and closed on the Summerville real estate.  The formal closing stated that the property was being sold for $200,000.00 only and that there were no other liens on the property.  After the formal closing was complete, Evans asked for the promissory note.  Evans told Bruce McMillan, I cant give this money to your brother without a reason.  I have to have a reason for an accounting purpose.  Because Evans was concerned about defrauding the bankruptcy court, he changed the note.  Evans made the $57,870.00 due for consulting work to be performed by Eddie McMillan.  Those changes were made in front of Bruce McMillan and with his permission.  Evans and Eddie McMillan had still not communicated. After the closing was complete, Eddie McMillan never received any money from Evans.
Eddie McMillan, filed a Summons and Complaint on December 9, 2002, whereby Eddie sought recovery of the balance due on a Balloon Payment Promissory Note and prayed for judgment against Peter J. Evans d/b/a Stella Nova, in the amount of Fifty Seven Thousand Eight Hundred Seventy and 00/100 ($57,870.00) Dollars, together with interest thereon at 6.5 % per annum together with monthly late charges in the amount of $25.00 per month, and attorneys fees and costs.
Evans answered, admitting that he signed the note, but affirmatively stated that he signed the note under fraudulent circumstances unknown to him at the time.  Evans affirmatively pled a failure of consideration and asserted that the actions by Charles McMillan and his brother, Bruce McMillan, to collect on the note amounted to an attempt to defraud the United States Bankruptcy Court and circumvent the United States Bankruptcy Code.
On April 19, 2004, the case was referred by the Court of Common Pleas to the Master in Equity Court for a final hearing.  The Court of Common Pleas further ordered that any appeal taken from a final order be in accordance with S.C. Code Ann. § 14-11-85, which provides that an appeal from an order must be to the South Carolina Supreme Court or Court of Appeals as provided by the South Carolina Appellate Court Rules.
On September 13, 2004, this case was tried before the Master in Equity.  The master decided the action was at law.  At the close of evidence, the trial court directed a verdict in favor of Evans.  He ruled the note was contingent upon legal consideration.  The court found a failure of consideration on the subject note.  The court determined the sales price in the written contract of sale for the subject property was the actual consideration for the sale.  Upon finding no consideration for the promissory note, the master held that Evans owed nothing to Eddie McMillan.  The court held that Eddie McMillan was judicially estopped from asserting a sales price of the subject property inconsistent with that asserted by his privy and brother, Bruce McMillan, in the United States Bankruptcy Court.
Standard of Review 
In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judges findings.  Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).  The rule is the same whether the judges findings are made with or without a reference. Id. The judges findings are equivalent to a jurys findings in a law action.  Chapman v. Allstate Ins. Co., 263 S.C. 565, 211 S.E.2d 876 (1974).
Discussion
I.  Consideration
Bruce and Eddie McMillan argue that consideration for the $57,870.00 promissory note was the discounted property price and the conveyance of the subject real estate.  We disagree.
A contract exists where there is an agreement between two or more people contingent on sufficient consideration either to do or not to do a particular act.  Regions Bank v. Schmauch, 354 S.C. 648, 582 S.E.2d 432 (Ct. App. 2003); Benya v. Gamble, 282 S.C. 624, 321 S.E.2d 57 (Ct. App. 1984).  There must be an offer and an acceptance accompanied by valuable consideration.  Regions Bank, 354 S.C. at 661, 582 S.E.2d at 439; Carolina Amusement Co. v. Connecticut Natl Life Ins. Co., 313 S.C. 215, 437 S.E.2d 122 (Ct. App. 1993).
The rule in this State is that parol evidence is admissible to show a different consideration from that expressed in a written instrument when language of consideration is intended as a mere recital, but not when it is contractual.  Iseman v. Hobbs, 290 S.C 482, 351 S.E.2d 351 (Ct. App. 1986); see also Shelton v. Skyland Stages, Inc., 170 S.C. 100, 169 S.E. 718 (1933); Gladden v. Keistler, 141 S.C. 524, 140 S.E. 161 (1927).  If the consideration recited is an act or forbearance, as distinguished from a promise or covenant, it may be shown that it did not take place and that therefore the writing is gratuitous and unenforceable.  Iseman, 290 S.C at 484, 351 S.E.2d at 352-53.  Whereas, if a promise or covenant is recited as having been made as consideration, this recital cannot be contradicted, explained, or varied by extrinsic evidence.  Id. at 484, 351 S.E.2d at 353.
Where the agreement in question is a written contract, the parties intention must be gathered from the contents of the entire agreement and not from any particular clause thereof.  Ellie, Inc. v. Miccichi, 358 S.C. 78, 594 S.E.2d 485 (Ct. App. 2004); Barnacle Broad., Inc. v. Baker Broad., Inc., 343 S.C. 140, 538 S.E.2d 672 (Ct. App. 2000).  If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contracts language determines the instruments force and effect.  Jordan v. Security Group, Inc., 311 S.C. 227, 428 S.E.2d 705 (1993); Blakely v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976); Miccichi, 358 S.C. at 93, 594 S.E.2d at 493.  When an agreement is clear and capable of legal interpretation, the courts only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it.  Heins v. Heins, 344 S.C. 146, 543 S.E.2d 224 (Ct. App. 2001).  The court must enforce an unambiguous contract according to its terms, regardless of the contracts wisdom or folly, or the parties failure to guard their rights carefully.  Ellis v. Taylor, 316 S.C. 245, 449 S.E.2d 487 (1994).  To discover the intention of a contract, the court must first look to its language to see if the language is perfectly plain and capable of legal construction; that alone determines the documents force and effect.  Superior Auto. Ins. Co. v. Maners, 261 S.C. 257, 199 S.E.2d 719 (1973); Miccichi, 358 S.C. at 94, 594 S.E.2d at 493.
Originally, the property appraised for $295,000.00.  However, Bruce McMillan made it clear that he only needed $200,000.00 to satisfy the property debt and $65,000.00 to satisfy his debt to Eddie McMillan.  Bruce offered the property to Evans for $265,000.00 and Evans accepted.  An agreement was formed between Bruce McMillan and Peter Evans, and permission was gained from the bankruptcy court to sell the property for $200,000.00.  The deed selling the property to Peter Evans from Bruce McMillan clearly stated that the property was being sold for $200,000.00 only, and that there were no other liens or encumbrances against the property.  After signing the deed, Bruce McMillan and Peter Evans never signed another document regarding the sale of the Summerville property.
Eddie McMillan sued Peter Evans for failure to pay the $57,870.00 promissory note.  Unfortunately, there was never an agreement between Eddie McMillan and Peter Evans, as evidenced by lack of an offer and acceptance as well as absence of consideration.  Even though Bruce McMillan states that the consideration for the promissory note was the reduced price of $200,000.00, there is no consideration between Eddie McMillan and Peter Evans.  The only enforceable agreement was between Bruce McMillan and Peter Evans, not Eddie McMillan and Peter Evans.  Nonetheless, Bruce McMillan never had control over the property Peter Evans bought because the bankruptcy court had complete control.  The promissory note provides that Eddie McMillan would perform consulting services.  According to his own testimony, Eddie McMillan never intended to perform any consulting services.  He stated, I had no dealings with Mr. Evans, whatsoever.  Therefore, any consideration for the promissory note was merely gratuitous.  No consideration exists.
The deed selling the land to Peter Evans for $200,000.00 is clear and unambiguous on its face.  Because there is no need to look further for any interpretation, the master correctly construed the language of the contract as being plain and capable of legal construction.
II.  Judicial Estoppel
Bruce and Eddie McMillan contend the principle of judicial estoppel does not apply because it would award Peter Evans a windfall and create an injustice to Eddie McMillan.  We disagree.
Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding.  Cothran v. Brown, 357 S.C. 210, 592 S.E.2d 629 (2004); see Colleton Regl Hosp. v. MRS Med. Review Sys., Inc., 866 F. Supp. 896, 900 (D.S.C. 1994).  The doctrines function is to protect the integrity of the judicial process or the integrity of the courts rather than to protect litigants from allegedly improper or deceitful conduct by their adversaries.  Commerce Center of Greenville, Inc. v. W. Powers McElveen & Assocs., Inc., 347 S.C. 545, 556 S.E.2d 718 (Ct. App. 2001); see also Cothran, 357 S.C. at 215, 592 S.E.2d at 631 (stating purpose of doctrine is to ensure integrity of judicial process, not to protect parties from allegedly dishonest conduct by their adversary).  Stated otherwise, judicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same or related litigation.  Hawkins v. Bruno Yacht Sales, 353 S.C. 31, 577 S.E.2d 202 (2003); Commerce Center, 347 S.C. at 554, 556 S.E.2d at 723.
In Hayne Fed. Credit Union v. Bailey, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997), our supreme court formally adopted the doctrine of judicial estoppel as it relates to matters of fact, not law.  In Cothran v. Brown, the court delineated the requirements for the application of judicial estoppel.  The following elements are necessary for the doctrine of judicial estoppel to apply: (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.  Cothran, 357 S.C. at 215-16, 592 S.E.2d at 632; see also Carrigg v. Cannon, 347 S.C. 75, 552 S.E.2d 767 (Ct. App. 2001).
Bruce McMillan and Eddie McMillan were in privity with one another.   More importantly, Bruce and Eddie had maintained inconsistent positions regarding the value of the property sold.  Hence, the first prong is met.  Second, the proceedings were related because the bankruptcy trustee was the only person with the authority to designate a value on the property.  Furthermore, Bruce McMillan received a benefit by discharging a debt the bankruptcy court had against him, thereby satisfying the third element.  Next, Bruce McMillan deliberately misled the bankruptcy court by selling the property for only $200,000.00, while attempting to pay off an unlisted debt through a secret promissory note.   Finally, it is apparent that the property cannot sell for $200,000.00 and $257,870.00.  It must be one or the other.  Therefore, all five prongs are met.
Bruce McMillan intentionally led the bankruptcy court to rely on the $200,000.00 sale to Peter Evans.  For Bruce McMillan and Eddie McMillan to succeed in suing Peter Evans would be tantamount to a fraud on the bankruptcy court.  Judicial estoppel precludes such a travesty.
Conclusion
Accordingly, the decision of the Master in Equity is 
AFFIRMED.
GOOLSBY, ANDERSON and SHORT, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.