2375

James R. MATHIS, Appellant v. Ila D. BURTON (Ila M. Burton), Larry M. McCall, Howard D. Mathis, Belinda M. Humphrey, Greenville Hospital System, James R. Mathis, as personal representatives of the class of contingent remaindermen, under Item Two of the Will of Myrtle M. Mathis, deceased: Robert Wayne Humphrey, Jr., Charles William Humphrey, James Andrew Humphrey, Christi Mathis, Melissa Diane Dickson and Gary Gene McCall, Respondents.

(460 S.E. (2d) 406)

Court of Appeals

---

*Adam Fisher*, Greenville, *for appellant.*

*George F. Townes*, Pickens; *Harry I. Rivers, Jr.*, Easley, *Arthur F. McLean, III*, Greenville, *for respondents.*

*Guardian ad Litem: James C. Mosley*, of Mauldin; and *Larry Welborn*, of Easley.

Heard Apr. 7, 1995.

Decided July 17, 1995, Reh. Den. Aug. 23, 1995.

CONNOR, Judge:

Greenville Hospital System sought to have a conveyance of real property from Myrtle Mathis to her son, James Mathis, declared void. The hospital claimed the transfer was fraudulent under the provisions of S.C. Code Ann. § 27-23-10 (1991), more commonly known as the Statute of Elizabeth. The trial judge set aside the transfer. We affirm.

Myrtle Mathis received in-patient and out-patient cancer treatments at Greenville Hospital System from April 11, 1990, until her death on August 11, 1991. She died in the hospital. The State Cancer Fund made the only payments to the hospital on Ms. Mathis's account. These payments covered only a small percentage of her out-patient treatments. Under the hospital's arrangement with the Cancer Fund, when the Fund ran out of money, the hospital had a right to seek the balance owed on the account from the patient.

After Ms. Mathis's death, the hospital timely filed a claim for payment of outstanding medical bills against her estate in probate court. However, the estate contained virtually no assets because Ms. Mathis had previously executed deeds conveying all her real property to her son, James. Although the deeds were dated March 4, 1991, they were not recorded until July 3, six days before Ms. Mathis entered the hospital for the last time.

The trial judge held Ms. Mathis conveyed the property in an attempt to avoid payment of her indebtedness to the hospital. As such, he held the transfers constituted fraudulent con-

veyances, voidable by the hospital under the Statute of Elizabeth.

S.C. Code Ann. § 27-23-10 (1991) states, in pertinent part:

> Every . . . conveyance of lands . . . which may be had or made to or for any intent or purpose to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties and forfeitures shall be deemed and taken . . . to be clearly and utterly void. . . .

(Emphasis added.)

In this case, Ms. Mathis's intent is partially evidenced by the chronology of events. Additionally, Ila M. Burton, her daughter, testified that, according to James, their mother had deeded him the property "to keep the hospital from coming in and taking everything she and my dad had worked for." Furthermore, Ms. Mathis's brother, Conrad McCall, testified he had discussed estate matters with Ms. Mathis on several occasions and that she "loved all of her kids, and . . . told me that she had her stuff where it wouldn't be throwed away."

James contends because the hospital was not a "creditor" at the time of the conveyance, it could not ask for relief under the Statute of Elizabeth. However, the statute does not limit its application to judgment creditors. Its protection also extends to other types of parties defrauded in connection with the conveyance of property. *Lebovits v. Mudd,* 293 S.C. 49, 358 S.E. (2d) 698 (1987); *Dennis v. McKnight,* 161 S.C. 209, 159 S.E. 555 (1931) (complaint stated a cause of action for fraudulent conveyance when defendant conveyed all his property to wife with intent of placing it out of the reach of plaintiff should she recover in wrongful death action filed two weeks after conveyance).

Conveyances may be set aside for existing creditors, as well as for subsequent creditors. For existing creditors, conveyances can be set aside in two instances:

> First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3)

the grantor's intent is imputable to the grantee. Second, where the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*Durham v. Blackard*, 313 S.C. 432, 435, 438 S.E. (2d) 259, 262 (Ct. App. 1993) (citations omitted) (interpreting the Statute of Elizabeth).

Although the record is not clear on how much of the total unpaid claim of $38,132.03 Ms. Mathis incurred on an in-patient basis, counsel for the hospital conceded during oral argument that she incurred most, if not all, of this amount during her last in-patient hospitalization. The last hospitalization occurred after she conveyed her property to James. Because she incurred the overwhelming portion of her debt subsequent to the challenged transfer, the trial judge erred by finding "there was a present obligation to the Hospital at the tine of the transfer and recording" sufficient to characterize the entire amount owing as an existing obligation. We therefore hold the hospital was a subsequent creditor, rather than an existing one. For subsequent creditors, while the analysis is somewhat different, the outcome here is the same. Subsequent creditors may have conveyances set aside when (1) the conveyance was "voluntary," that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors. *Gentry v. Lanneau*, 54 S.C. 514, 32 S.E. 523 (1899); *see also Parker Peanut Co. v. Felder*, 200 S.C. 203, 20 S.E. (2d) 716 (1942) (rule invalidating fraudulent preferences has been applied in favor of subsequent as well as existing creditors); *Iley v Niswanger*, 6 S.C. Eq. (1 McCord Eq.) 518 (1826) (a voluntary settlement, by a person not in debt, cannot be impeached by a subsequent creditor, unless made with a view to future indebtedness, or attended with some

other circumstances of fraud). Subsequent creditors must show "actual moral fraud," rather than legal fraud. *Gentry v. Lanneau; accord Jackson v. Plyler,* 38 S.C. 496, 17 S.E. 255 (1983). In this case the trial judge found Ms. Mathis and James intended to defraud the hospital. There is ample evidence in the record to support this finding. Allowing the transfer of property under the facts of this case would clearly allow Ms. Mathis and James to circumvent the intent of the statute.

Accordingly, the order of the trial judge is

Affirmed

SHAW and CURETON, JJ., concur.