742 S.E.2d 672

James T. JUDY, Bobby R. Judy, and Kevin Judy, Respondents,

v.

Ronnie F. JUDY, J. Todd Judy, Ryan C. Judy, and Wanda B. Judy, Defendants,

Of whom Ronnie F. Judy is the Appellant.

Appellate Case No.2012–209028.

No. 5101.

Court of Appeals of South Carolina.

Heard Feb. 13, 2013.

Decided March 20, 2013.

Eric Christopher Hale, of the Law Office of Eric C. Hale, LLC, of Irmo, and Craig Robert Stanley, of the Law Office of Craig R. Stanley, of Columbia, for Appellant.

Capers G. Barr, III, of Barr Unger & McIntosh, LLC, of Charleston, for Respondents.

KONDUROS, J.

Ronnie F. Judy (Ronnie) appeals the special referee's order setting aside conveyances of property to his children pursuant to the Statute of Elizabeth and the award of attorney's fees against him. We affirm in part and reverse in part.

## FACTS

In 1998, Ronnie owned one-half interests in lands totaling in excess of 722 acres in Dorchester County. He owned, outright, lands in Dorchester County totaling in excess of 147 acres. At trial, Ronnie's brother, James (Jimmy), testified that in 1997 or 1998 he recounted to Ronnie advice he received to convey out of his name property he had inherited from his father because of his pending divorce. At the time, Ronnie was engaged in legal disputes himself. He had been sued by Larry Mills, and he was also engaged in a dispute about a piece of farming equipment that could have exposed him to a $10,000 claim. Jimmy testified Ronnie told him he intended to transfer his property to his sons, because of these threatened liabilities. On November 16, 1998, Ronnie conveyed his interest in more than 869 acres to his children, Todd and Ryan, in two separate deeds (Remote Conveyances). The consideration

for the transfers was $5.00, love, and affection. He also transferred his farm equipment to them. The record demonstrates Ronnie continued to farm the land, receive revenue from it, and borrow money against it. In 2000, the Mills claim was satisfied with Ronnie paying a $14,546.49 judgment.

The relationship between Jimmy and other family members and Ronnie and his family deteriorated. Bobby and Kevin Judy, other brothers of Ronnie and Jimmy, sued Ronnie for destroying a corn crop in 2003, and the case was tried in May 2007. Jimmy sued Ronnie for destroying a man-made pond and dam in 2003. On February 7, 2007, nine days after the first call of the pond case for trial, Ronnie signed and recorded deeds (Recent Conveyances) conveying his home on a 9.29 acre tract and a nearby 10.9 acre tract to Todd for $5.00, love and affection. The pond case was tried in April 2007.[1]

On September 27, 2007, Jimmy, Bobby, and Kevin filed suit against Ronnie, Todd, and Ryan seeking to void the Remote and Recent Conveyances. On December 31, 2008, while the case was pending, Todd conveyed to Ronnie's wife, Wanda, the same 9.29 and 10.9–acre tracts that Ronnie had conveyed to him the year before.[2]

The special referee found both the Remote and Recent Conveyances violated the Statute of Elizabeth[3] and, with respect to the Remote Conveyances, he reformed the subsequent partition deeds to substitute Ronnie as the true owner and party to the action. The special referee also assessed $7,000 in attorney's fees and $800 as a special referee fee against Ronnie and Todd based on "bad faith" and "vexatious conduct." This appeal followed.

## STANDARD OF REVIEW

"A clear and convincing evidentiary standard governs fraudulent conveyance claims brought under the Statute of Eliza-

---

1. The jury held Ronnie liable for actual and punitive damages in the corn crop case. *See Judy v. Judy,* 384 S.C. 634, 682 S.E.2d 836 (Ct.App.2009). The jury also found Ronnie liable in the pond case, but the verdict was reversed based on *res judicata. See Judy v. Judy,* 393 S.C. 160, 712 S.E.2d 408 (2011).

2. Wanda was added as a party to the case.

3. S.C.Code Ann. § 27–23–10(A) (2007).

beth. An action to set aside a conveyance under the Statute of Elizabeth is an equitable action, and a de novo standard of review applies." *Oskin v. Johnson*, 400 S.C. 390, 396, 735 S.E.2d 459, 463 (2012).

**LAW/ANALYSIS**

**I.  Avoidance of Transfers under the Statute of Elizabeth**

Section 27–23–10(A) of the South Carolina Code (2007), commonly known as the Statute of Elizabeth, provides:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them, or of any lease, rent, commons, or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, and execution which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, and every one of them whose actions, suits, debts, accounts, damages, penalties, and forfeitures by guileful, covinous, or fraudulent devices and practices are, must, or might be in any ways disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

The Statute of Elizabeth "does not limit its application to judgment creditors. Its protection also extends to other types of parties defrauded in connection with the conveyance of property." *Mathis v. Burton*, 319 S.C. 261, 264, 460 S.E.2d 406, 408 (Ct.App.1995); *see also Lebovitz v. Mudd*, 293 S.C. 49, 52–53, 358 S.E.2d 698, 700 (1987) (finding complaint stated cause of action for fraudulent conveyances when plaintiffs alleged defendants made property transfers to avoid potential judgment from existing tort claim); *Dennis v. McKnight*, 161 S.C. 209, 211–12, 159 S.E. 555, 556 (1931) (finding complaint stated a cause of action for fraudulent conveyance when defendant conveyed all his property to wife with intent of placing it out of the reach of plaintiff should she recover in wrongful death action filed two weeks after conveyance).

"Subsequent creditors may have conveyances set aside when (1) the conveyance was 'voluntary,' that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors." *Mathis,* 319 S.C. at 265, 460 S.E.2d at 408 (citing *Gentry v. Lanneau,* 54 S.C. 514, 32 S.E. 523 (1899)). "Subsequent creditors must show 'actual moral fraud,' rather than legal fraud." *Id.* at 266, 460 S.E.2d at 409. Actual moral fraud involves "a conscious intent to defeat, delay, or hinder [one's] creditors in the collection of their debts." *First Carolinas Joint Stock Land Bank of Columbia v. Knotts,* 191 S.C. 384, 409, 1 S.E.2d 797, 808 (1939). With a voluntary inter-family transfer, the burden shifts to the transferee to establish the transfer was valid. *See Windsor Props., Inc. v. Dolphin Head Constr. Co.,* 331 S.C. 466, 471, 498 S.E.2d 858, 860 (1998) ("Where transfers to members of the family are attacked either upon the ground of actual fraud or on account of their voluntary character, the law imposes the burden on the transferee to establish both a valuable consideration and the bona fides of the transaction by clear and convincing testimony.").

With respect to the Remote Conveyances, Ronnie contends Jimmy, Bobby, and Kevin do not have standing to assert the Statute of Elizabeth because they were not subsequent creditors as contemplated by the statute at the time of the transfers. We disagree. A subsequent creditor may successfully set aside a voluntary transfer if it was made with a view toward future indebtedness *or* actual fraudulent intent on the part of the grantor to evade creditors.[4] The Remote Conveyances were voluntary, and, while Ronnie may not have had an eye toward a specific future indebtedness to his brothers, the record demonstrates he recognized putting his property in his children's names could insulate him from existing and known potential creditors. Additionally, the record demonstrates Ronnie continued to enjoy the benefits of ownership of the property by continuing to farm it, receive income from it, and

---

4. *See In re Ducate,* 355 B.R. 536, 544 (D.S.C.2006) ("The test [for voiding a conveyance] does not require fraud as to a specific creditor, only that the transfer was made with an intent to 'defraud creditors' in general. Thus, if [a] [d]ebtor transferred the property with the intention of defrauding any creditor, the second prong would be satisfied.").

borrow money against it. This is clear and convincing evidence of his intention that the conveyances be title-only transfers intended to confound or hinder creditors. *See Beaufort Veneer & Package Co. v. Hiers,* 142 S.C. 78, 98, 140 S.E. 238, 245 (1927) (Cothran, J., dissenting) (finding grantee's failure to exercise possession over property was a badge of fraud); *Hudnal v. Wilder,* 15 S.C.L. 294, 305 (Ct.App.1827) (stating donor's continued possession, use, and exercise of ownership over property was evidence of fraudulent intent); *Maples v. Maples,* 14 S.C.Eq. 300, 311 (Ct.App.1839) (indicating property which a vendor continued to enjoy and to which the vendee was only nominal owner bore a fraudulent character).

■ With respect to the Recent Conveyances, our conclusion is the same. Again, the transfers were voluntarily made to a family member. Both were made just a few months prior to the trial of the tort claims against Ronnie, and the record shows he continued to treat the properties as his own.

Even if we concluded clear and convincing evidence of actual moral fraud had not been adduced at the summary judgment stage, because the Remote and Recent Conveyances were to family members and voluntary, the burden shifted from the Jimmy, Bobby, and Kevin to the grantees to establish the bona fides of the transfers. In this case, neither Todd, Ryan, nor Wanda testified. Consequently, they did not meet their burden to persuade the referee that the transfers were bona fide. Therefore, we affirm the special referee's grant of summary judgment regarding the Remote and Recent Conveyances.

## II. Authority of Special Referee

■ Ronnie contends the special referee lacked the authority to reform deeds issued in partition actions filed after the Remote Conveyances were made. This issue was neither raised to nor ruled upon by the special referee. Therefore, it is unpreserved for appellate review. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.,* 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (holding that to be preserved for appellate review, an issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3)

raised in a timely manner, and (4) raised to the trial court with sufficient specificity).

## III.   Attorney's Fees

■   Finally, Ronnie maintains the special referee erred in assessing $7,800 in fees against Todd and him.   We agree in part.

"The practice of each party paying his own attorney fees is often referred to as the 'American Rule.' South Carolina follows the American Rule." 2 S.C. Jur. *Attorney Fees* § 2 (citations omitted).   "As a general rule, attorney fees are not recoverable unless authorized by contract or statute." *Id.; see also Jackson v. Speed,* 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997) (stating a party cannot recover attorney's fees unless authorized by contract or statute); *Hegler v. Gulf Ins. Co.,* 270 S.C. 548, 549, 243 S.E.2d 443, 444 (1978) ("As a general rule, attorney's fees are not recoverable unless authorized by contract or statute.").

In awarding attorney's fees, the special referee relied on *Roadway Express v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), and the South Carolina Frivolous Proceedings Act, Section 15–36–10 of the South Carolina Code (Supp. 2012).   In *Roadway Express,* the court was considering the award of costs based on the "vexatious" multiplication of court proceedings. *Id.* at 757, 100 S.Ct. 2455.   The vexatious conduct recited by the special referee in his order is primarily the underlying fraudulent conduct of Ronnie.   However, if that behavior is a sufficient basis for an award of attorney's fees, fees would be appropriate in any Statute of Elizabeth case and our legislature has not provided for such by statute.   Therefore, we conclude the award of fees against Ronnie constituted an abuse of discretion, and is therefore reversed.[5]

---

5.   We need not reach the issue of whether Todd's transfer of property to Wanda during the litigation served as a sufficient basis for an award of fees against him as he is not a party to this appeal and that ruling is the law of the case. *See Godfrey v. Heller,* 311 S.C. 516, 520–21, 429 S.E.2d 859, 862 (Ct.App.1993) (stating an unappealed ruling is the law of the case).

## CONCLUSION

Based on all of the foregoing, the special referee's order is **AFFIRMED IN PART AND REVERSED IN PART.**

HUFF and WILLIAMS, JJ., concur.