797 S.E.2d 409

**FIRST CITIZENS BANK AND TRUST COMPANY, INC., Respondent,**

v.

**PARK AT DURBIN CREEK, LLC; Kenneth E. Clifton; and Linda G. Whiteman; Defendants,**

**Of whom Park at Durbin Creek, LLC and Kenneth E. Clifton are the Appellants.**

**Appellate Case No. 2014-002295**
**Opinion No. 5469**

Court of Appeals of South Carolina.

Heard November 17, 2016
Filed February 15, 2017
Rehearing Denied March 16, 2017

334

James Calhoun Pruitt, Jr., of Pruitt & Pruitt, of Anderson, for Appellants.

James H. Cassidy, Ella McKenzie Sims Barbery, and, Joseph Owen Smith, all of Roe Cassidy Coates & Price, P.A., of Greenville, for Respondent.

WILLIAMS, J.:

The Park at Durbin Creek, LLC (PDC) and Kenneth Clifton (collectively, Appellants) appeal the circuit court's decision to set aside Clifton's conveyance of property to PDC on the grounds that the conveyance violated the Statute of Elizabeth. On appeal, Appellants claim the circuit court erred in setting aside the transfer of Clifton's interest in the property to PDC when (1) the testimony of both owners of the property established a valid purpose for the transfer, and (2) the property was transferred by both owners in a single deed without any showing of fraudulent intent. Additionally, Appellants claim the circuit court erred in admitting certain testimony regarding a subsequent conveyance of Clifton's interest in PDC to a third party, Streamline Management, LLC (Streamline). We affirm.

**FACTS**

In 1995, Clifton and Linda Whiteman purchased approximately 370 acres (the Property) in Laurens County, South Carolina. They owned the Property in their individual names as tenants in common from 1995 until September 18, 2008. Testimony at trial established Clifton and Whiteman purchased the Property for retirement purposes. In addition to the Property, they purchased two other tracts of land in the early 1990s, which they also held as tenants in common in their individual names.

Clifton, a successful real estate developer, commonly purchased personal investment property in his name. If Clifton chose to develop the property, he would then transfer his interest in the property to a limited liability company (LLC), which he or employees of his company created. During Clifton's career, he organized over forty LLCs.

To generate capital to finance his developments, Clifton routinely borrowed money from third-party lenders. At issue in this case are three loans between Clifton and First Citizens Bank (Respondent), all generated to finance three separate development projects. The original principal amount of the three loans totaled $3,873,000. Respondent submitted evidence that none of these loans were intended to be long-term loans and Respondent continued to renew these loans as Clifton made progress payments over the years.

The real estate market began to decline in 2008. In early January 2008, Clifton sought extensions on two of his loans with Respondent that were approaching their maturity dates. Prior to agreeing to a modification of the loans' terms, Respondent requested Clifton submit a personal financial statement. Clifton presented a financial statement dated January 23, 2008, in which he claimed a $50 million net worth, with his real estate assets comprising over $48 million of his claimed net worth. Clifton listed the Property on his financial statement. Clifton claimed he possessed a 50% interest in the Property, it was unencumbered, and it was valued at approximately $1,570,000. Respondent stated it relied upon Clifton's representations in his financial statement, and as a result, extended these two loans to mature in January 2009.

Clifton's third loan was set to mature on July 12, 2008, but Clifton also requested an extension on this loan. Less than a week prior to Respondent granting the modification on the third loan, Clifton and Whiteman transferred their interests [1] in the Property to PDC. Without knowledge of this transfer, Respondent then granted Clifton's extension request on September 22, 2008, resulting in all three loans maturing in January 2009. During this timeframe, Clifton and Whiteman transferred their interests in the other two tracts of land to LLCs. Clifton also transferred the bulk of his personal real estate holdings to other LLCs.[2] According to Respondent, it became concerned with Clifton's ability to pay the balance on the outstanding loans. Respondent requested Clifton to bring his interest payments current on the three loans and to

---

**1.** As discussed *infra*, Clifton testified he and Whiteman chose to transfer their interests in the Property to PDC based upon Whiteman's long-standing concerns regarding personal liability because the Property was being leased to third parties for recreational hunting.

**2.** Specifically, Clifton and Whiteman transferred property they owned in their individual names since 1993 to Gardens at Fourteen, LLC, on July 31, 2008. On September 15, 2008, Clifton transferred personal ownership of four tracts of land that he had owned since at least 2004 to Pawley Plantation, LLC. Three days later, on September 18, 2008, Clifton and Whiteman transferred property they owned in their individual names since 1992 to Pelham at Boiling Springs, LLC. The following day, on September 19, 2008, Clifton transferred ownership of his office building, which he owned individually since 1997, to Central Office, LLC. All of these transfers occurred just prior to Respondent granting Clifton a final extension.

provide additional collateral before agreeing to again extend the maturity dates on the loans. Despite Respondent's requests, Clifton failed to provide a business plan or secure additional collateral. As a result, Respondent accelerated the loans and commenced foreclosure proceedings in February 2009. Respondent obtained foreclosure judgments against Clifton, and after foreclosure and deficiency sales took place, a deficiency judgment totaling $745,317.86, plus interest, was entered against Clifton.

In the midst of Respondent obtaining foreclosure judgments against Clifton, Clifton and his two daughters entered into an assignment agreement on August 5, 2009. In the assignment agreement, Clifton agreed to disassociate from PDC and transfer his membership interest in PDC to Streamline, whose sole members were Clifton's two daughters and his ex-wife. Streamline was nonexistent on the date of the assignment but was subsequently organized in January 2010. Whiteman testified she did not authorize or consent to Clifton's transfer or assignment of his membership interest in PDC to Streamline.

In October 2010, Respondent initiated supplemental proceedings against Clifton in an effort to collect on the deficiency judgment. However, by this time, all of the assets listed in Clifton's financial statement to Respondent were foreclosed upon, transferred to one of Clifton's business partners as payment for outstanding debt, or disposed of in some manner, so that Clifton had no remaining assets to pay his debts to Respondent. Respondent filed suit against Appellants and Whiteman on October 20, 2010, seeking relief under the Statute of Elizabeth [3] and alleging causes of action for fraudulent conveyance, civil conspiracy, and partition. Each party timely answered.

The circuit court held a one-day nonjury trial and subsequently issued an order to set aside the conveyance of the Property to PDC. The circuit court concluded sufficient "badges of fraud" existed to infer Clifton possessed fraudulent intent when he transferred his interest in the Property to PDC. As a result, Clifton's conveyance of his 50% interest in the Property was null and void pursuant to the Statute of Elizabeth. To that end, Clifton's subsequent conveyance of his

---

3. S.C. Code Ann. § 27-23-10 (2007).

50% interest in PDC—a company whose only asset was the Property—to Streamline was also improper and invalid. Specifically, the circuit court concluded the attempted transfer on August 5, 2009, was void ab initio as Streamline did not exist at that time. Even assuming Clifton could have transferred his interest at that time to a nonexistent entity, the court concluded Clifton failed to obtain Whiteman's consent to the admission of new members into PDC. As a member-managed LLC, Whiteman's lack of consent invalidated the Streamline transaction pursuant to section 33-44-404(c)(7) of the South Carolina Code (2006).[4] Appellants timely filed a Rule 59(e), SCRCP, motion to alter or amend, which the circuit court denied. This appeal followed.

**STANDARD OF REVIEW**

"A clear and convincing evidentiary standard governs fraudulent conveyance claims brought under the Statute of Elizabeth." *Oskin v. Johnson*, 400 S.C. 390, 396, 735 S.E.2d 459, 463 (2012). "An action to set aside a conveyance under the Statute of Elizabeth is an equitable action," and this court applies a de novo standard of review. *Id.* at 397, 735 S.E.2d at 463.

The admission and exclusion of evidence "are matters largely within the [circuit] court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion." *Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen & Assocs., Inc.*, 347 S.C. 545, 559, 556 S.E.2d 718, 725 (Ct. App. 2001). "[T]o reverse a case based on the erroneous admission or exclusion of evidence, prejudice must be shown." *Id.* at 559, 556 S.E.2d at 726.

**LAW/ANALYSIS**

**I. Statute of Elizabeth**

Appellants contend the circuit court improperly invoked the Statute of Elizabeth to set aside the conveyance of the Property to PDC because Clifton made the conveyance pursuant to a legitimate purpose. We disagree.

The Statute of Elizabeth provides the following:

---

4. Section 33-44-404(c)(7) states that, in a member-managed LLC, the admission of a new member requires the consent of all members.

Every gift, grant, alienation, bargain, transfer, and conveyance of lands ... for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken ... to be clearly and utterly void....

S.C. Code Ann. § 27-23-10(A) (2007).

Our courts have set aside conveyances for existing creditors, such as Respondent, in two instances. *Mathis v. Burton*, 319 S.C. 261, 264, 460 S.E.2d 406, 407 (Ct. App. 1995).

First, whe[n] the challenged transfer was made for [ ] valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Second, where the transfer was [ ] made [without] valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*Id.* at 264–65, 460 S.E.2d at 408 (quoting *Durham v. Blackard*, 313 S.C. 432, 437, 438 S.E.2d 259, 262 (Ct. App. 1993)).

In this case, the circuit court found—and both parties agree—that valuable consideration was exchanged for the transfer of Clifton's interest in the Property to PDC. Accordingly, Respondent was required to establish by clear and convincing evidence that Clifton transferred the property with the "intent to delay, hinder, or defraud [Respondent]." § 27-23-10(A).

■ When a party denies any fraudulent intent in transferring an asset outside the reach of a creditor—as Clifton asserts in the instant case—our courts have inferred fraudulent intent if one or more of the following "badges of fraud" exist:

[T]he insolvency or indebtedness of the transferor, [a] lack of consideration for the conveyance, [a] relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, [a] departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property. *Coleman v. Daniel*, 261 S.C. 198, 209, 199 S.E.2d 74, 79 (1973). It is generally recognized that, although the identification of one badge of fraud does not create a presumption of fraud, "whe[n] there is a concurrence of several such badges of fraud[,] an inference of fraud may be warranted." *Id.* at 209–10, 199 S.E.2d at 79–80 (quoting 37 AM. JUR. 2D *Fraudulent Conveyances* § 10 (1968)). "A badge of fraud creates a rebuttable presumption of intent to defraud." *Royal Z Lanes, Inc. v. Collins Holding Corp.*, 337 S.C. 592, 596, 524 S.E.2d 621, 623 (1999).

We find the circuit court properly held Clifton transferred the Property to PDC for purposes of avoiding Respondent's claims. We further find that several "badges of fraud," as recited by our supreme court in *Coleman*, create an inference of fraud in this case. First, Clifton was originally indebted to Respondent for close to $4 million. At the time of the transfer, Clifton was still indebted to Respondent. Clifton was in the process of negotiating another extension when he transferred the Property to PDC, and thus, we find this element is satisfied. Second, Clifton, as the transferor, was also one of two members of PDC, the entity to which he was transferring the Property. As Clifton's personal interests and those of PDC were essentially one in the same, we find this element is satisfied. Third, although Clifton contests litigation was looming, we—like the circuit court—conclude Clifton was well aware that his failure to satisfy his obligations to Respondent or to successfully negotiate another modification would result in inevitable litigation. It is uncontested Clifton was behind on his payments and Clifton never presented any evidence that Respondent guaranteed it would grant him an additional modification, particularly given its previous extensions, beyond the loans' original maturity dates. Fourth, Clifton was not forthright with Respondent in how he handled the conveyance. While actively negotiating an extension on these loans, Clifton

transferred the Property to PDC. However, Clifton failed to inform Respondent he transferred the Property to PDC or to submit an updated financial statement to reflect his decreased net worth in the wake of transferring numerous, personally held properties to a number of LLCs. We find this course of conduct to be secretive, particularly given Clifton's knowledge that Respondent relied upon his ownership of these properties—and the unencumbered Property in particular—when it initially agreed to modify the loans' maturity dates. Last, Clifton reserved a benefit in the Property and retained possession of the Property after the conveyance. Clifton and Whiteman were the original members of PDC, each having a 50% ownership interest in the Property. After Clifton's conveyance, PDC's only asset was the Property. As a result, Clifton retained his 50% ownership interest in the Property, despite its transfer to PDC. Therefore, of the nine "badges of fraud," we find six of the nine factors[5] weigh in favor of finding Clifton intended to defraud Respondent of its rightful claim to the Property when he conveyed it to PDC.

Having found Respondent created a presumption of fraud, we next address whether Appellants successfully rebutted this presumption. Based upon our review of the record, we find Appellants failed to rebut this presumption. At trial, Clifton asserted he transferred the Property to PDC at the insistence of Whiteman. Clifton testified that Whiteman was "hammering" him every day to place the Property into an LLC based on her fear of the liability associated with the Property being used for recreational hunting. Renee Gilreath, Clifton's daughter, also testified they transferred the Property to PDC based on Whiteman's liability concerns as well as for legitimate business purposes. According to Whiteman, she agreed to transfer her interest in the Property to PDC due to "liability and the timing ... because ... [Clifton] was starting another subdivision." Whiteman denied having any knowledge of Clifton's financial uncertainties with Respondent and stated, while she agreed to transfer her interest in the Property to PDC,

---

**5.** The remaining three factors—which do not apply in this case—include the following: lack of consideration for the conveyance, departure from the usual method of business, and the transfer of the debtor's entire estate. *See Coleman,* 261 S.C. at 209, 199 S.E.2d at 79.

she never agreed to Clifton transferring his interest in the Property from PDC to Streamline.

Having heard the foregoing testimony and evidence, the circuit court concluded Clifton's testimony was not credible. The court stated Clifton and his office staff chose the timing of the transfer, and despite their joint ownership of the Property for over twenty years and Whiteman's request to transfer the Property into a LLC for years, it was not until September 2008 when Clifton was experiencing financial uncertainties with Respondent that this transfer was consummated. Further, the court acknowledged Clifton "also transferred essentially all [the] properties he owned individually into various LLCs. . . . By doing this, he essentially divested himself of any individual ownership interest in any real property which had any significant equity that could be reached by creditors." Because the Property was debt-free and had significant equity, the court concluded Clifton wanted to protect the Property from creditors, despite offering other legitimate reasons for the transfer.

We concur with the circuit court's findings that Clifton intended to unlawfully place the Property outside Respondent's reach. Because the Statute of Elizabeth prohibits a conveyance of land with the purpose to delay, hinder, or defraud a creditor, we hold the circuit court properly concluded Clifton's conveyance of his 50% interest in the Property to PDC was null and void.

## II. Division of the Deed

■ Appellants also contend the circuit court's decision to set aside the conveyance to PDC was improper because Whiteman and Clifton transferred the Property in a single deed. According to Appellants, voiding the sale as to Clifton effectively divided the deed, which is error when Respondent failed to prove Whiteman acted with any fraudulent intent when she transferred her interest in the Property to PDC. We disagree.

The record shows Whiteman and Clifton owned the Property as tenants in common. As tenants in common, each person owned a 50% undivided interest in the Property. *See* 6 S.C. JURIS. *Cotenancies* § 5 (1991) ("Tenants in common each own a

distinct and proportionate but undivided interest or estate in the property and do not have privity of estate with each other."). As tenants in common, each cotenant may transfer his or her separate ownership interest in the property without consent or participation of the other. *See* 6 S.C. JURIS. *Cotenancies* § 37 (1991) ("In the absence of a contrary contractual provision, one cotenant may sell, lease, or mortgage his share or interest in the property to ... third parties."). If one cotenant conveys his or her interest to a third party, the third party—as grantee—becomes a tenant in common with the remaining cotenants. *See* 6 S.C. JURIS. *Cotenancies* § 39 (1991) ("A conveyance by one cotenant to a third party ... conveys only the interest of the cotenant, and thus his grantee becomes a tenant in common with the other cotenants."). Because "[t]he interest of a tenant in common is freely alienable ... [it] is subject to the claims of creditors." 6 S.C. JURIS. *Cotenancies* § 6 (1991).

Accordingly, we find the conveyances of Whiteman's 50% interest and Clifton's 50% interest to PDC were each distinct transfers that Whiteman and Clifton merely chose to accomplish in a single deed. The fact they utilized one instrument to transfer their separate interests does not negate the distinct ownership interest each person possessed in the Property. As mutually exclusive conveyances, we also find that the invalidity of one does not necessarily invalidate the other. To that end, Whiteman's intent in transferring her share of the Property to PDC is irrelevant to the circuit court's finding of fraudulent intent as to Clifton. Clifton's proportional interest is subject to the claims of his creditors, and he cannot legitimize the fraudulent transfer of his interest by lumping it together with Whiteman's presumably valid transfer of her interest. Regardless of the parties' choice of instrument to convey the Property, we find the circuit court properly set aside the conveyance pursuant to the Statute of Elizabeth.

## III.  Admission of Evidence

■  Last, Appellants contend the circuit court erred in admitting evidence of a subsequent transaction involving PDC's transfer of the Property to a third party, Streamline, because that issue was neither raised in the pleadings nor tried by consent. We find this issue is unpreserved.

As an initial matter, Respondent claims Appellants failed to properly preserve this issue for our review. Respondent contends that Appellants failed to contemporaneously object when evidence concerning the Streamline transaction was first introduced at trial. Specifically, Respondent introduced "Plaintiff's Exhibit 4" to the court, which was a conveyance timeline for certain properties owned by Clifton. Included in this exhibit was an attachment containing the PDC assignment document, in which Clifton assigned his interest in PDC to Streamline. Respondent introduced this exhibit to the court without objection from Appellants. The next time the assignment of Clifton's interest in PDC was discussed occurred during Respondent's direct examination of Whiteman when Respondent questioned Whiteman regarding her knowledge of the transfer to Streamline. Appellants failed to object to this line of questioning. It was not until Renee Gilreath's testimony that Appellants objected to any evidence or testimony concerning the Streamline transaction.

Based on our review of the record, we find Appellants failed to timely object to this evidence at trial, and thus, it is not preserved for our review. *See Holly Woods Ass'n of Residence Owners v. Hiller*, 392 S.C. 172, 185, 708 S.E.2d 787, 794 (Ct. App. 2011) (finding appellants failed to object contemporaneously at trial and concluding the issue was not preserved for appellate review). Further, Appellants' subsequent objections did not cure their failure to contemporaneously object when the evidence was first introduced. *Pinkerton v. Jones*, 310 S.C. 295, 298, 423 S.E.2d 151, 153 (Ct. App. 1992) (finding belated objection to evidence that was introduced earlier in trial did not cure earlier failure to object on the same ground). Accordingly, we find this issue is not preserved for our review.

**CONCLUSION**

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.