**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

China Construction America of South Carolina, Inc., Appellant/Respondent,

v.

MS Production Solutions LLC a/k/a MSPS Steel Fabricators, Manfred Sprenger and Patricia Sprenger, Respondents/Appellants.

Appellate Case No. 2016-001787

---

Appeal From Greenville County
Charles B. Simmons, Jr., Circuit Court Judge

---

Unpublished Opinion No. 2019-UP-304
Submitted December 1, 2018 – Filed August 21, 2019

---

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

---

Caitlin Creswick Heyward and Henry Pickett Wall, both of Bruner Powell Wall & Mullins, LLC, of Columbia, and Robert Crum Osborne, III, of Parker Poe Adams & Bernstein, LLP, of Charleston, all for Appellant/Respondent.

J. Falkner Wilkes, of Greenville, for Respondents/Appellants.

---

**PER CURIAM:** China Construction America of South Carolina, Inc. (China Construction) appeals the master-in-equity's order setting aside transfers of funds from MS Production Solutions, LLC, a/k/a MSPS Steel Fabricators (MSPS) to Patricia Sprenger (Patricia) because the conveyances violated the Statute of Elizabeth, and declining to set aside transfers of funds to Manfred Sprenger (Manfred). On appeal, China Construction argues the master erred by: (1) declining to set aside transfers from MSPS to Manfred as fraudulent and in violation of the Statute of Elizabeth, (2) limiting China Construction's recovery to fraudulent transfers made after the lawsuit's filing date, (3) declining to enter judgment against Patricia individually, and (4) failing to make a finding as to whether a perfected security interest existed in MSPS's deposit accounts and order an execution on the deposit accounts. MSPS cross-appealed, arguing the master erred by finding the transfers from MSPS to Patricia were without consideration and were fraudulent in violation of the Statute of Elizabeth. We affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

On April 2, 2014, China Construction filed a complaint alleging breach of contract, breach of warranty, indemnity, negligence, unfair and deceptive trade practices, and promissory estoppel against MSPS. This action arose from a contract requiring MSPS to fabricate and deliver steel required for China Construction's project renovating a high school building. China Construction filed a motion for an order of default against MSPS, which the circuit court granted on August 5, 2014. On December 24, 2014, the circuit court found in favor of China Construction against MSPS in the amount of $657,137.30. Thereafter, the circuit court filed a rule to show cause and order of reference on May 5, 2015, referring the case to the master and ordering MSPS was "restrained and enjoined from making any transaction or transfer . . . which is not exempt from execution . . . ."

On June 2, 2015, the master held a hearing regarding the supplemental proceedings. At the hearing, Manfred testified he was the sole owner of MSPS and paid himself a salary of $7,000 in addition to an occasional bonus. He explained he occasionally wrote checks from his personal account to MSPS "to pay the bills" and MSPS would eventually pay him back. Manfred described these transfers as loans, but did not retain any documentation evidencing the loan. He explained his bonuses would be paid from any money the company could spare; however, he stated he had not received a bonus in "the last couple of years . . . because . . . the economy was bad." The master continued the hearing to allow the parties to look

through additional discovery and ordered Manfred was not allowed to sell or convey anything out of the normal course of business, transfer anything, or incur new debt without the approval of both parties' attorneys.

In his deposition, Manfred testified he received the court's rule to show cause and acknowledged that MSPS was prohibited from making any transfers. He stated the $60,000 payment from MSPS to Patricia on May 27, 2015, was a repayment of a past loan. Manfred also asserted MSPS was repaying him for the $350,000 he "[brought] to the table in order to buy [the] company." He stated he had not been fully repaid for his initial loan; however, he had "no specific documents [of the loan repayments] since [MSPS was] a family business." Manfred also testified the payments from MSPS to himself and Patricia represented his salary and repayments for his loans to MSPS "to help the company's cash flow[.]" He stated Patricia was never an employee of MSPS.

In her deposition, Patricia stated she was not an employee of MSPS. She testified the checks from MSPS were written to her because it was easier for her to deposit the money than Manfred. She stated she received a $60,000 check from MSPS, some of which she sent to her mother in Germany to help with family members' funeral costs; however, she testified she kept approximately $50,000 in cash in her home. Patricia stated she paid the family bills with the $7,000 payments Manfred "t[ook] out for his work at [MSPS]." She asserted the February 4, 2014, payment of $6,000 from their personal checking account to MSPS was to cover paychecks for MSPS employees. Patricia also testified Manfred did not tell her why he wrote her a check for $60,000 from MSPS.

On September 23, 2015, China Construction filed a motion for execution and to set aside fraudulent transfers, requesting the master set aside and order an execution on all transfers to Patricia and Manfred, order Manfred and Patricia return all transfers as partial satisfaction of the judgment against MSPS, and order an accounting of all transfers.

On October 2, 2015, the master held a hearing regarding China Construction's motion to set aside fraudulent transfers. During the supplemental proceedings the master directed MSPS "to take all reasonable efforts to recapture th[e] $50,000" in cash in the possession of Patricia and Manfred, which Patricia testified they kept in their bedroom, within seven days. The master also explained "transfers may not be made outside of the normal course of business" and if loans were necessary, they must be "legitimate transactions with a [p]romissory [n]ote and . . . a paper trail . . . ." Thereafter, at a November 18, 2015 hearing, Manfred testified the only action he took to recover the funds which were transferred to Patricia was to write

a letter from MSPS to himself and Patricia requesting the funds be returned to MSPS. He also explained he and Patricia only had $8,000 in cash in their home, not $50,000 as Patricia previously stated. Manfred testified he loaned MSPS $25,000 in either June or July. However, he explained there was no written promissory note for the loan because that has never been MSPS's practice. Pursuant to China Construction's motions, the master granted China Construction leave to join Manfred and Patricia as necessary parties to the action and ordered MSPS to deposit $8,000 into a trust account to preserve the funds until further proceedings regarding the transfers.

On March 2, 2016, the master held a hearing regarding China Construction's motion to set aside MSPS's fraudulent transfers. Manfred testified MSPS made payments to Patricia because it was "easier to write the check[s] directly to [Patricia]" and she would deposit the checks in their joint checking account. He admitted MSPS's company ledger did not reflect any checks written to himself. Manfred stated it was not uncommon for him to put his own money into MSPS's business account to "keep the cash flow going" and to pay the payroll and suppliers. He explained he loaned MSPS $40,000 in March 2015 and $25,000 in July 2015 from his personal account to keep the business's account from carrying a negative balance. Manfred testified MSPS owed him approximately $180,000 because since 2013 he has not taken his full salary. He asserted MSPS wrote a $60,000 check to Patricia for Manfred's salary from January to June and repayment of the $40,000 loan he made in March 2015. At the hearing, Benjamin O'Dell, Manfred and Patricia's Certified Public Accountant, testified Patricia did not claim any money transferred to her from MSPS as income.

On June 7, 2016, the master filed an order setting aside the transfers to Patricia, and declining to set aside the transfers to Manfred. The master found the transfers to Patricia were fraudulent because they were not based upon valuable consideration, and set aside all transfers from MSPS to Patricia which occurred after the date the lawsuit was filed. The master declined to set aside transfers to Manfred based on its finding that the transfers to Manfred were not fraudulent because they were based upon valuable consideration and the evidence showed Manfred often made emergency loans to MSPS and was occasionally repaid without documentation.

## STANDARD OF REVIEW

"Our scope of review for a case heard by a [m]aster-in-[e]quity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543

(1989).  "A clear and convincing evidentiary standard governs fraudulent conveyance claims brought under the Statute of Elizabeth."  *Oskin v. Johnson*, 400 S.C. 390, 396-97, 735 S.E.2d 459, 463 (2012).  "An action to set aside a conveyance under the Statute of Elizabeth is an equitable action, and a de novo standard of review applies."  *Id.* at 397, 735 S.E.2d at 463.

## LAW/ANALYSIS

## I.    CHINA CONSTRUCTION'S APPEAL

### A. TRANSFERS TO MANFRED

China Construction argues the master erred by finding the transfers from MSPS to Manfred were not fraudulent and not in violation of the Statue of Elizabeth.  It contends the conveyances were made with intent to defraud creditors and MSPS failed to prove the transfers were made for valuable consideration.  We agree.

The Statute of Elizabeth provides:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them, or of any lease, rent, commons, or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, and execution which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken . . . to be clearly and utterly void . . . .

S.C. Code Ann. § 27-23-10(A) (2007).

"Our courts have set aside conveyances for existing creditors . . . in two instances." *First Citizens Bank & Tr. Co. v. Park at Durbin Creek, LLC*, 419 S.C. 333, 340, 797 S.E.2d 409, 413 (Ct. App. 2017).  "First, where there was valuable consideration and the transfer is made by the grantor with the actual intent to defraud; and, second, where a transfer is made without actual intent to defraud but without valuable consideration."  *Oskin*, 400 S.C. at 397, 735 S.E.2d at 463.

> [W]he[n] the challenged transfer was made for [ ] valuable consideration, it will be set aside if the plaintiff

establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee.

*First Citizens*, 419 S.C. at 340, 797 S.E.2d at 413 (second and third alterations in original) (quoting *Mathis v. Burton*, 319 S.C. 261, 264-65, 460 S.E.2d 406, 408 (Ct. App. 1995)).

[W]he[n] the transfer was [ ] made [without] valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*Id* (third and fourth alterations in original).

The master erred by failing to set aside MSPS's transfers to Manfred. *See Oskin*, 400 S.C. at 397, 735 S.E.2d at 463 ("An action to set aside a conveyance under the Statute of Elizabeth is an equitable action, and a de novo standard of review applies"). The evidence indicates the transfers from MSPS to Manfred were made for valuable consideration because they were considered payment for Manfred's work for MSPS as its sole owner. However, the record supports a finding MSPS intended to defraud creditors. *See First Citizens*, 419 S.C. at 340, 797 S.E.2d at 413 ("[W]he[n] the challenged transfer was made for [ ] valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee." (second and third alterations in original) (quoting *Mathis*, 319 S.C. at 264-65, 460 S.E.2d at 408)). MSPS's general ledgers from 2012 and 2013 do not reflect any transfers to Manfred. Moreover, the first evidence of a transfer to Manfred was on August 12, 2015, after MSPS was restrained from selling anything or making transfers outside the normal course of business by the rule to show cause filed on May 5, 2015, and the master's oral ruling at the June 2, 2015 hearing. Although the master found Manfred "often made loans to MSPS that were necessary to keep the business bank accounts from having a negative

balance[,]" the only evidence of payments from Manfred to MSPS found in the record were in November 2014, February 2015, and July 2015 for a total of $105,000. Moreover, the general ledgers from 2012 and 2013 do not reflect any transfer from MSPS to Manfred. Therefore, the evidence in the record does not reflect that transfers to Manfred were in the normal course of MSPS's business. The amount and dates of the transfers to Manfred were not consistent; MSPS transferred $7,000 on September 22, 2015, and then transferred $14,000 the following day. Moreover, from November to December of 2015, MSPS made two $10,000 transfers and one $2,800 transfer. Since the filing of this action on April 2, 2014, evidence in the record shows $105,000 in payments from Manfred and Patricia's personal account to MSPS; however, the transfers from MSPS to Manfred and Patricia total $279,393.84. While MSPS argues the loans to MSPS were necessary to keep the company's accounts from carrying a negative balance, the loans on November 24, 2014, February, 26, 2015, and July 15, 2015, totaling $105,000 would not have been necessary had MSPS not transferred $70,000 on September 29, 2014, and $60,000 on May 27, 2015, to Patricia for a total of $130,000. Accordingly, we believe that sufficient evidence exists to show MSPS made the transfers to Manfred with the intent of defrauding its creditors.

As to whether the grantor was indebted at the time of the transfer, this factor was met by the circuit court's final judgment against MSPS for $657,137.30. Regarding whether the grantor's intent is imputable to the grantee, we believe MSPS's intent to defraud China Construction is imputable to Manfred because he was the sole owner and president of MSPS with sole control of the MSPS bank account.

Although the transfers from MSPS to Manfred were based upon valuable consideration, clear and convincing evidence proves MSPS intended to defraud creditors. Accordingly, we find that the transfers to Manfred should be set aside and the master's order should be reversed on this issue.

### B. LIMITED RECOVERY

China Construction argues the master erred by only setting aside the transfers made by MSPS after the present lawsuit was filed. We disagree.

Although it is not necessary to limit the determination of fraudulent transfers to those after the entry of judgment, it is "necessary that the debt should have been in existence or the right of action have accrued at or before the time of the transfer." *Matthews v. Montgomery*, 193 S.C. 118, 7 S.E.2d 841, 848 (1940). While it is

possible the debt or obligation accrued prior to the filing of the lawsuit at the time MSPS breached its contract with China Construction, no evidence in the record established when the breach occurred.  No evidence exists that the breach occurred on August 12, 2013, as China Construction argues.  China Construction's complaint does not specify a date on which MSPS breached their contract.  Further, the contract does not specify a date for delivery of the goods.  In its order of judgment, the circuit court found MSPS "failed to deliver a majority of the steel [required] under the [c]ontract."  It also found half of the steel which was delivered, was defective.  However, the circuit court did not make a finding as to when the breach of contract occurred.  Thus, the date of the breach of contract cannot be determined by the evidence in the record.  Moreover, no evidence in the record indicates MSPS was aware of the debt or obligation before the lawsuit was filed.  Although China Construction argues MSPS received and sent correspondence regarding its breach of contract, no correspondence dated before the lawsuit was filed exists in the record.  Accordingly, the evidence establishes the debt existed or the right of action accrued at the time the lawsuit was filed.  We find no error.  *See Oskin*, 400 S.C. at 397, 735 S.E.2d at 463 ("An action to set aside a conveyance under the Statute of Elizabeth is an equitable action, and a de novo standard of review applies.").

## C. SECURITY INTEREST IN AND EXECUTION ON MSPS'S DEPOSIT ACCOUNTS

China Construction argues the master erred by failing to make a finding as to whether a perfected security interest in MSPS's deposit accounts existed.  It also asserts the master erred by failing to issue an order of execution on MSPS's deposit accounts and directing the funds in the deposit accounts be transferred to China Construction.

Based upon the evidence in the record, we cannot determine whether China Construction is entitled to execute on the deposit account or whether China Construction had a perfected security interest in the deposit account.  The master declined to make a finding as to the relevant security interests in the deposit account and did not order an execution on deposit accounts.  We cannot determine from the evidence in the record what assets remain in the MSPS deposit account.  Moreover, although the master noted "there is a significant question concerning the security interests" of the deposit account, the master declined to make any findings as to which creditors had a security interest or the priority of their security interests.  Therefore, there is insufficient evidence in the record to make a determination on this issue.  *See Brayboy v. Clark Heating Co. Inc.*, 306 S.C. 56,

409 S.E.2d 767 (1991) (remanding for further proceedings to clarify the Workers' Compensation Commission's findings); *Pack v. S.C. Dep't of Transp.*, 381 S.C. 526, 673 S.E.2d 461 (Ct. App. 2009) (remanding for further proceedings when the Workers' Compensation Commission failed to detail its factual findings on the record); *Seago v. Horry Cty*, 378 S.C. 414, 663 S.E.2d 38 (2008) (remanding for further proceedings when relevant information could not be determined by the evidence on the record). Accordingly, we remand this issue for further proceedings.

## II.    MSPS'S APPEAL

MSPS argues the master erred by setting aside the transfers from MSPS to Patricia because they were made for valuable consideration and no evidence of an intent to defraud creditors existed. We disagree.

Clear and convincing evidence supports the master's ruling setting aside the transfers from MSPS to Patricia because the transfers were not based upon valuable consideration. Patricia did not provide evidence in the record to prove the alleged fraudulent conveyances were bona fide and based upon valuable consideration. *See Coleman v. Daniel*, 261 S.C. 198, 208, 199 S.E.2d 74, 79 (1973) ("Where transfers to members of the family are attacked either upon the ground of actual fraud or on account of their voluntary character, the law imposes the burden on the transferee to establish both a valuable consideration and the bona fides of the transaction by clear and convincing [testimony]." (quoting *Gardner v. Kirven*, 184 S.C. 37, 191 S.E. 814, 816 (1937))). Both Manfred and Patricia testified Patricia was never an employee of MSPS. Further, Manfred and Patricia's accountant testified Patricia did not claim the money she received from MSPS on her taxes. Accordingly, the transfers from MSPS to Patricia were not based upon valuable consideration. *See First Citizens*, 419 S.C. at 340, 797 S.E.2d at 413 ("[W]he[n] the transfer was [ ] made [without] valuable consideration . . . the transfer will be set aside if . . . (1) the grantor was indebted . . . at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness . . . in full . . . ." (third and fourth alterations in original) (quoting *Mathis*, 319 S.C. at 264-65, 460 S.E.2d at 408)). First, MSPS was indebted at the time of the transfers to Patricia because MSPS had breached a contract with China Construction and the circuit court subsequently entered a judgment against MSPS. Second, MSPS's conveyances to Patricia were voluntary because Manfred claimed he transferred the money to Patricia as his salary and Patricia stated she deposited all of Manfred's paychecks. Finally, as to the final factor, whether the grantor failed to retain sufficient property to pay the

indebtedness, MSPS failed to retain sufficient funds to satisfy the $657,137.30 judgment.

Additionally, although China Construction argues the master erred by declining to enter judgment against Patricia individually, the master's order sufficiently allows China Construction to "execute on any non-exempt assets of Patricia up to $221,593.84[,] which represents the transfers from MSPS to Patricia . . . ."  The master's order allows China Construction to levy and execute on any of Patricia's non-exempt property, up to the amount of the transfers from MSPS to Patricia, which were set aside by the master.  Therefore, the master ordered a remedy which is sufficient to permit China Construction to recover assets from Patricia equal to the amount of the fraudulent transfers from MSPS to Patricia.  Clear and convincing evidence supports a finding that the master's order is a sufficient remedy to allow China Construction to recover the $221,593.94 fraudulently transferred to Patricia.

We find the master did not err by setting aside the transfers from MSPS to Patricia because they were made without valuable consideration and declining to enter judgment against Patricia individually.  This portion of the order is affirmed.

**CONCLUSION**

Accordingly, the decision of the trial court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**[1]

**HUFF, SHORT, and WILLIAMS, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.